CASE 67—PETITION EQUITY—SEPTEMBER 25.

# City of Louisville v. Board of Trade.

APPEAL FROM LOUISVILLE CHANCERY COURT.

90   409.
1.05 355

90 409
112 453

90 409
f120 210

90    409
121    116

1. A STATUTE EXEMPTING FROM TAXATION the property of an institution so long as it is " occupied " by the institution for the purposes of its organization, does not exempt such portions of the property as may be rented out, although the rents may be applied to such purposes.

2. POWER OF CITY TO EXEMPT FROM TAXATION.—A city council can

City of Louisville v. Board of Trade.

grant an exemption from taxation only to the extent that the Legislature has authorized it to do so.

3. STATUTE STRICTLY CONSTRUED.—Statutes granting exemptions from taxation are to be strictly construed.

4. INJUNCTIONS.—A party seeking relief by injunction must point out definitely the extent to which he is entitled to be relieved. Therefore, when one seeks to enjoin a tax, for a part of which he is liable, he must separate the just from the unjust portion of the claim. and ask relief only as to the latter, and as the plaintiff in this case has failed to do this, his petition should be dismissed.

L. N. DEMBITZ FOR APPELLANT.

1. The renting of the Board of Trade building to strangers, with a view to the rent, is not an occupation by the Board of Trade "for the purposes contemplated in its organization" within the meaning of the condition upon which it is exempted from taxation. (The Bank v. Tennessee, 104 U. S., 493; Crawford v. Burrell, 53 Pa. St., 219; County Comrs. v. Sisters of Joseph, 48 Mo., 34; Pacific Mail S. S. Co. v. Commis. of Taxes, 64 N. Y., 541; Proprietors of Lowell Meeting House v. Lowell, 1 Met., 541; Pierce v. Cambridge, 2 Cush., 423; Trustees of Good Shepherd v. Boston, 120 Mass., 212; Redemptorist Fathers v. Boston, 129 Mass., 178; Lynn Workingmen's Aid Asso. v. City of Lynn, 136 Mass., 288; Milwaukee & St. Paul R. Co. v. Crawford County, 29 Wis., 116; Crawford County v. Chicago, St. Paul, &c., R. Co., 48 Wis., 666; Cleveland Library Asso. v. Pelton, 36 Ohio, 256; St. Joseph's Church v. Assessor, 12 R. I., 19; Red, &c., v. Johnson, 53 Texas, 284; Orr v. Baker, 4 Ind., 83; State v. Lynn, 36 N. J., 360; State v. Krollman, 38 N. J., 323; Same v. Axtell, 41 N. J., 117; Temple Grove Seminary v. Cramer, 98 N. Y., 121; St. Mary's Church v. Tripp, 14 R. I., 307; Northwestern University v. The People, 99 U. S., 309; new edition of Cooley on Taxation, pp. 204–213; Desty on Taxation, vol. 1, 161–165, 119–120.)

2. A court will not enjoin the collection of taxes upon a mere defect in the proceedings, if the tax be substantially just and owing. (Renick v. Curry, 4 Ky. Law Rep., 156; Burlington, &c., R. Co. v. Franz, 22 Ill., 34.

3. Even if it be true that the assessment comprises a portion of the lot and building that is not liable, still the plaintiffs below had no right to ask for an injunction unless they had pointed out the proportion taxable and that not taxable, and offered to pay the taxes owing on the parts that are taxable. (Appeal Tax Court v. Masonic Lodge, 50 Md.; State Railroad Tax Cases, 92 U. S., 575.)

4. An injunction is a remedy peculiar to a court of equity; and a party applying for such a remedy may always be put upon terms. (White v. Cates, 7 Dana, 358.)

BROWN, HUMPHREY & DAVIE FOR APPELLEE.

1. The charter and the exempting act and ordinance contemplated that the entire structure which this public and charitable organization was authorized to purchase, was to be exempt so long as the Board of Trade should own and occupy it. There was no provision for exempting part. The fact that a part was left empty, or rented out, did not change the statute which exempted the "one hundred by two hundred-foot lot, and any improvements thereon." (Acts 1862, page 230; Acts 1873, vol. 2, page 578; Hareman v. Queen, 49 Wis., 71; Hancock v. Morgan, 17 Texas, 582; Bouvier's Law Dictionary, title "Occupant.")

2. Where the exemption is of a certain sized lot, with improvements thereon, "while occupied for a certain purpose," the whole lot and improvements are exempt, if any part of it is occupied for that purpose. (49 Wis., 71; 17 Texas, 582.)

3. Occupation by a tenant to raise money for its support is "occupying the building for the purposes contemplated in the organization" of the Board of Trade. (University v. People, 99 United States, 323; Walters v. People, 18 Ill., 199; 21 Ill., 178; 10 Abbott's New Cases, 429; 98 New York, 126; 101 Mass., 319; 12 Mo. Ap., 342.)

4. The contemporaneous construction put for years on this exemption by the State and city tax officers shows that the whole building was intended to be exempt. (Barbour v. Louisville, 83 Ky., 95; United States v. Moore, 95 U. S., 763.)

5. Homestead lands are exempt by statute under the same policy, and it has always been held that an exemption of a house or lot of land from execution "so long as occupied by the owner" exempts the entire house, although the owner may live in a part thereof, and rent out the other portions. (Phipps v. Acton, 12 Bush, 377; Stansbery v. Sims, 79 Ky., 529; 9 Wisconsin, 70; 17 Texas, 371; 37 Arkansas, 298; 22 Michigan, 260; 10 Minnesota, 157; 1 Nevada, 607.)

6. The decision in 82 Kentucky, 653, that this building could not be exempt from State taxes, does not prevent it from being exempt from city taxes. (Cooley on Taxation, 2d ed., 71; Board v. Watson, 5 Bush, 662; Southgate v. Covington, 15 Ben. Monroe, 498.)

7. The following have been held to be so far public purposes or public services as to justify exemption from city taxation: Boards of Trade (Bushy & Simon on Law of Produce Exchange, sec. 79); New Orleans Cotton Exchange (35 La. Ann., 1154); Town Hall, used for general meeting of citizens, but not belonging to the city (6 Pickering, 101; 77 Ill., 325; 3 Allen, 9); Places for Commercial Gatherings (7 La. Ann., 510; 2d Ohio State, 107); Market-houses, which are analogous to Boards of Trade (Dillon on Municipal Corporations, sec. 384; Lewis on Eminent Domain, 174; 33 Pa. State, 209; 50 Texas, 539; 28 Hun., 515; 4 La. Ann., 355); a building for the Society to

Prevent Cruelty to Animals (142 Mass., 24); Statues of Public Men or Art Statuary (Lewis on Eminent Domain, 133; 2d Hun., 146); monuments to ornament a city (Dillon on Municipal Corporations, sec. 599); Christian Association Rooms (44 Hun., 102); a Laboratory (61 Pa. State, 31); Public Squares (Dillon on Municipal Corporations, 598; 51 Illinois, 57; 54 Missouri, 458); a fountain on the street or in a square (Dillon on Municipal Corporations, 599); Parks (63 Barbour, 282); a Town Clock (12 Pickering, 227); a Grist Mill (111 U. S., 363); any Institution for "Fostering Commerce" (21 Pa. State, 172; 60 Pa. State, 31; 16 Gray, 425; 1st Wallace, 296; 59 American Decisions, 775.)

8. The said city ordinance of exemption, of 1879, constituted a contract between the city of Louisville and the Board of Trade, which contract was protected by the provisions of the United States Constitution against the impairment of the obligations of contracts. The subsequent city tax ordinance of December, 1885, under which this tax was levied, impaired the obligation of said contract, and is void. (125 U. S., 31; 132 U. S., 184; 116 U. S., 131; 10 Howard, 511, 541; 16 Howard, 369; 1 Wallace, 116; 105 U. S., 362; 8 Wall., 430, 439; 3 Howard, 133; 20 Wall., 36; 16 Wallace, 314; 13 Wallace, 264; 4 Wallace, 143.)

9. The Kentucky Statute reserving the right to repeal legislative acts does not apply to city ordinances. (Desty on Taxation, vol. 1, 425; 100 Indiana, 585.)

10. An injunction was the proper remedy to prevent the enforcement of the illegal tax levy.     (84 Ky., 502; 79 Ky., 295; 8 Bush, 206; 5 Bush, 243; 21 Federal Reporter, 49; High on Injunctions, 796, 801; ·Cooley on Taxntion, 539.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

The appellant, the city of Louisville, having, by its proper officer, levied upon some furniture in use in the Board of Trade rooms of the appellee, the Louisville Board of Trade, for municipal taxes for the year 1886 upon its building in the city of Louisville, it enjoined their collection upon the ground, mainly, that the property was exempt from taxation.

This claim is based upon a legislative act of 1873, which provides: "Any real estate held by the Louisville Board of Trade in the city of Louisville by pur-

chase in fee-simple, not exceeding one hundred by two hundred feet in area, and any improvements thereon, shall be, and are hereby, exempted from all State taxes *so long as such property shall be occupied by said Board of Trade for the purposes contemplated in its organization.* And the general council of the city of Louisville is authorized to exempt such property *so held and occupied* from all taxes authorized to be levied by said general council of said city of Louisville."

The property was purchased by the appellee several years after the passage of this statute. The council of the city adopted a resolution, which contains no reference to the limitation in the legislative act relative to the occupation of the property by the appellee for the purposes of its organization, and which by its terms purports to exempt the property from all city tax. Unquestionably, however, the council could grant an exemption only to the extent that the Legislature could constitutionally, and had, in fact, authorized.

Conceding that an institution may render such a local governmental service to a city as will authorize its exemption from city tax by the Legislature, or by the municipal government acting under legislative authority, and that the appellee does so, yet the first question presented is, whether, upon the facts shown, and under a fair construction of the statute, the property of the appellee is exempt.

The building is five stories high; and when the taxes for 1886 were assessed but two small rooms, constituting a part of the rear of one floor, and which

are not over one-twentieth part of the building, probably, if that, were in actual use by the appellee for the purposes of its organization. All of the balance of the large and valuable property, save two or three rooms temporarily vacant, were rented out by the appellee for various purposes, such as banking, insurance and office use generally. The lower court enjoined perpetually the collection of any city taxes for 1886 upon the building.

What is the meaning of the condition "so long as such property shall be held and *occupied* by the Board of Trade *for the purposes contemplated in its organization?*" Is the renting of it to strangers an "*occupation*" of it by the board within the meaning of the exempting statute? And next, if it be, is it an occupation by it "for *the purposes contemplated in its organization?*" The taxation of *all* property is the just and equitable rule. An exemption from it is a special privilege, one in conflict with the universal obligation of all property-holders to aid in the support of the government, and the exception will not be presumed. A surrender upon the part of the State of the right to tax must be shown by express and unequivocal language or necessary inference. The exemption, however meritorious, is of grace, and statutes imposing restrictions upon the taxing power of the State, save so far as they may tend to secure equality of assessment, are to be strictly construed.

These are familiar principles, well settled, not only by the decisions of this court, but of the Supreme Court of the United States. It readily strikes the mind as unjust to all other property-holders, and as

not only likely, but certain, to lead to infinite mischief to permit a corporation to escape the common burden, and secure immunity from taxation, by investing its means in property not in use for the purposes of its creation. Before a court will help it to do so by injunction, a clear case must be presented.

It is claimed for the appellee that the occupation by a tenant is an occupation by it within the meaning of the statute, and that, as the rents are applied to its uses, that this is an occupation "for the purposes contemplated in its organization." In support of this view we are referred to the construction which has been given by this court to the word "occupation," as used in our homestead law, but it, unlike the statute under consideration, should be liberally construed. Moreover, if a widow were, by a temporary absence, to lose her homestead right, it would be gone forever, while the appellee, provided it renders such governmental service as to constitutionally entitle it to exemption, may at any time regain the right by such a use of the property as its organization contemplated. If it is entitled to the exemption of a building worth one hundred thousand dollars, upon the ground that, within the fair meaning of the statute, an occupation by a tenant is its occupation, and that an application of the rents to its uses is an occupation for the purposes of its organization, then equally is it entitled to the exemption from the common burden of a building worth millions of dollars. This would serve to render its stock very valuable, perhaps, and place upon its neighbor the burden which it could well afford to bear. No presumption in its favor should

be indulged that will lead to such a result, and defeat that reasonable equality necessary to valid taxation; and, in our opinion, a fair and reasonable construction does not admit of it. This view is sustained by both reason and authority. No case can, perhaps, be found where the language of the statute in question is precisely like this one, but precedent is not lacking where it is the same in substance.

In the case of Appeal Tax Court v. The Grand Lodge of Masons, 50 Md., 421, where the statute exempted the property belonging to benevolent and charitable institutions, so far as the same was used for the purposes of the organization, it was held that where such an institution rented out a portion of its building, such portion was not exempt from taxation, although the rent was applied in aid of the charitable purposes of the organization.

The same construction had been previously adopted by the court in Frederick County v. Sisters of Charity of St. Joseph, 48 Md., 34, where it was contended, as it is here, that the application of the rents to the benevolent objects of the institution entitled it to the exemption of the portion of its property occupied by its tenants. The claim was denied.

In the case of the Chapel of the Good Shepherd v. Boston, 120 Mass, 212, the statute exempted from taxation the property of charitable and religious institutions occupied by them for the purposes of their organization, and the right to an exemption of property which was rented out, and the rents applied to. the purposes of the institution, was denied. Said Chief Justice Gray in delivering the opinion:

"In order to exempt real estate belonging to a charitable institution from taxation, it is not enough that the income derived therefrom should (as all the income of the corporation, from whatever source derived, must) be applied to the purposes for which it was incorporated, but the real estate itself must be occupied by the corporation or its officers for those purposes."

In Pierce v. The Inhabitants of Cambridge, 2 Cushing, 611, where the statute exempted the property of literary and charitable institutions, if actually occupied by them for the purposes of their organization, it was decided that property leased out was not to be considered as in the occupancy of Harvard College so as to exempt it from taxation.

In the recent case of Morris v. Lone Star Chapter of Masons, where the Constitution of the State of Texas authorized its Legislature to exempt from taxation the buildings of institutions of public charity, it was held that such buildings only were intended as were used exclusively and actually by such institutions, and that if certain portions of a building belonging to such an institution were rented out it was to that extent taxable, although the rents were used in furtherance of the charity. (68 Texas, 698.)

In the case of the Bank v. Tennessee, 104 U. S., 493, where a bank was required by its charter to pay a certain tax upon its capital stock in lieu of all other taxes, and was authorized to hold property for its use as a place of business, it was held that its immunity from taxation extended to only so much of the building as was necessary to the carrying on of its business.

Many other cases might be cited to the same effect. They establish the rule that an exemption from taxation in favor of an institution while it occupies its building for the purposes of its organization, does not exempt it when rented out, or such portions of it as may be leased, although the rents may be applied to such purposes.

Desty on Taxation, volume 1, page 119, note, says: "If the buildings, or any portion thereof, belonging to a benevolent and charitable institution, are used for other purposes for a profit, the building, to the extent thus used, is liable to taxation, although the proceeds from such extraneous use are devoted to charitable purposes."

The petition in this case shows that some portions of the appellee's building are rented out, but it does not point out what portions. It discloses the fact that at least a portion of it is liable to taxation, but it does not disclose what portion. The answer avers that the assessor, in assessing the tax in question, deducted a proportionable part of the building for the two rooms actually in use by the appellee. This is denied by the reply, and not proven, and it is, therefore, urged that the judgment below must be sustained upon the ground that the tax bill is erroneous. The judgment, however, is, that no taxes can be assessed or collected as to the entire building for the year 1886, and it must, therefore, of course, be reversed. But a party seeking relief by injunction must make out a clear case for equitable interposition. The burden is upon him. Here the petition shows that at least a portion of the property was

liable for taxes. It shows that something is due. This being so, it was the duty of the party asking relief to definitely point out the extent to which he was entitled to be relieved. If he seeks equity he must do equity. He must show his willingness to pay what he in fact owes, or at least in a case like this he must show to the court how much he in fact does not owe. He must, inasmuch as injunction is peculiarly an equitable remedy, separate the just from the unjust portion of the claim, and ask relief only as to the latter. This the appellee has failed to do, and the judgment is reversed, with directions to dismiss the petition.