GYMNASTIC ASSOCIATION OF THE SOUTH SIDE OF MILWAUKEE, Appellant, vs. CITY OF MILWAUKEE and another, Respondents.

*September 17—October 9, 1906.*

*Statutes: Construction: Repeal: Taxation: Exemptions: Turner societies: "Property used exclusively for educational purposes:" Indivisible building partly rented for other purposes.*

1. A statute directed towards a special subject is ordinarily preponderant over a later and more general statute; but when the earlier statute is special only in the sense that it applies to a single case, of which there are many in the state, and the later statute is general in its operation and applies to all such cases, then the earlier one is deemed to be superseded by the later and, so far as inconsistent, to be repealed.
2. Thus ch. 44, P. & L. Laws of 1869, incorporating the plaintiff Turner society and exempting all its property from taxation, was superseded and repealed, as to such exemption, by ch. 309, Laws of 1883 (subd. 23, sec. 1038, Stats. 1898), providing that all the "property of the Turner societies which are or may be incorporated under the laws of this state, which is used exclusively for educational purposes, is hereby exempted from taxation."
3. Under a statute limiting exemptions to property "used exclusively for" a specified purpose, a devotion of the income of the property to such purpose is not sufficient, but there must be primary physical use therefor of the very property for which exemption is claimed.
4. Thus, where portions of a building owned by a Turner society were leased for a saloon and a barbershop, the building was not

"used exclusively for educational purposes," within the meaning of subd. 23, sec. 1038, Stats. 1898, even though the rentals received were used by the society for such purposes.

5. Under said statute the whole of an indivisible building, and the ground on which it stands, is subject to taxation unless the whole is rendered exempt by being used exclusively for educational purposes.

[6. Whether a mere incidental use promotive of the main purpose (as the letting of a hall for lectures when not required for the uses of the society owning it, or the use of parts of a building for living rooms for teachers or janitors) would destroy the exemption, not determined.]

APPEAL from an order of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

The appeal is from an order sustaining a demurrer to the plaintiff's complaint praying cancellation of an assessment and levy of general taxes for the year 1904 on plaintiff's real estate, and for temporary and permanent injunction against any steps to collect such taxes. The complaint alleges that plaintiff is a corporation organized under ch. 44, P. & L. Laws of 1869, under the name of *"The Gymnastic Association of the South Side of Milwaukee,"* called in German "Der Turn Verein der Suedseite von Milwaukee," without stock and not for profit, and that it is authorized to own and hold real estate for the purposes of the association not exceeding in value $50,000. Such act also provided "that all real and personal property of this association shall be exempt from taxation." It is alleged that the property in question held by the association is of the value of about $25,000, with a mortgage thereon of $10,000; that the same is divided into a gymnasium, a dining room on the first floor, and a saloon and barbershop in the basement; that the saloon is rented to the janitor of said building for $45 per month, together with the use of a room in the rear for living purposes, in consideration of which contract of rental the janitor is required to perform all the duties of janitor for the entire building, the saloon being run by him for his own profit. The barbershop

is rented to persons not members of the association at a rental of $12.50 per month.    Both saloon and barbershop front on the street and are open to the general public.    It is further alleged that the gymnasium hall is frequently rented to out-side parties for dances, political meetings, concerts, and lec-tures at prices ranging from $15 to $40; that all of said rentals, together with the annual dues of $4.20 of each of the 500 members, go into the treasury of the association and are expended in paying its necessary expenses; that the plaintiff conducts regular gymnastic exercises in the gymnasium each day except Sunday for eleven months in the year and regu-larly employs a gymnastic instructor at a salary of $1,200 per annum; that from 300 to 320 children between the age of six to fourteen years, as well as adults, receive instruction covering the whole field of gymnastics; that for such instruc-tion the members of the association and their children pay nothing, while others pay twenty-five cents per month; that the plaintiff also conducts during the winter months a course of lectures on scientific and historical subjects, also a series of debates.    Under the organization of the plaintiff corpora-tion no dividends or pecuniary profits can be made by indi-vidual members thereof; no salaries are paid to officers, ex-cept $1,200 a year to the physical instructor and $75 to the finance secretary.    The complaint also alleges the levy and attempted collection by the city of taxes and the cloud upon title resulting therefrom.

*Julius E. Roehr,* for the appellant.

For the respondents there was a brief by *John T. Kelly,* city attorney, and *Benjamin Poss,* assistant city attorney, and oral argument by *Mr. Poss.*

DODGE, J.    1. The first question to be resolved is whether the taxability of plaintiff's property is governed by the spe-cial act incorporating it, ch. 44, P. & L. Laws of 1869, or by the general statute, originally ch. 309, Laws of 1883, which,

before the assessment of these taxes, had become embodied in the revision of 1898 as subd. 23, sec. 1038, Stats. 1898, and provides:

"All of the real and personal property of the Turner societies which are or may be incorporated under the laws of this state, which is used exclusively for educational purposes, is hereby exempted from taxation."

There is, of course, a well-recognized rule of statutory construction to the effect that an act directed towards a special subject is ordinarily preponderant over a more general act, yet that is, at best, but a rule of construction, yielding whenever a contrary legislative intent is reasonably apparent; and such intent will ordinarily be inferred, first, where the later and more general act governs the whole subject to which it relates, and is manifestly designed to embrace the entire law thereon; and, more specific still, when the earlier statute is special only in the sense that it applies to a single case, of which there are many in the state, and the later statute is general in its operation and applies to all such cases, then the earlier one is deemed to be superseded by the latter and, so far as inconsistent, to be repealed. *Southport v. Ogden,* 23 Conn. 128; *Coe v. Meriden,* 45 Conn. 155; *Hartford v. Hartford T. Sem.* 66 Conn. 475, 34 Atl. 483; *Louisville & N. R. Co. v. Williams,* 103 Ky. 375, 45 S. W. 229; *Nusser v. Comm.* 25 Pa. St. 126; *Rhoads v. Hoernerstown Bldg. & Sav. Asso.* 82 Pa. St. 180, 187; *Best v. Baumgardner,* 122 Pa. St. 17, 15 Atl. 691; *Westfield v. Tioga Co.* 150 Pa. St. 152, 160, 24 Atl. 700; *Kellogg v. Oshkosh,* 14 Wis. 623, 628; *State ex rel. Risch v. Trustees,* 121 Wis. 44, 52, 98 N. W. 954.

In the legislation under consideration we find all the elements to make the last-stated rule applicable. There were in the state many Turner societies organized under special acts, most of them doubtless accorded exemption from taxation like the plaintiff, others, perhaps, without such exemp-

tion or with it under different limitations. Then we have the many Turner societies organized for similar purposes under general statutes and having no such individual exemption, unless, perhaps, under the general exemption to charitable and educational associations, the applicability of which might be considered doubtful. There was every reason why the legislature should treat all such societies alike, and none for any difference. There is, therefore, the highest probability that when a general law was passed in terms applicable to all Turner societies, as was done in 1883, it was intended to express the legislative purpose as to the exemption from taxation which any such society should enjoy. We deem it clear that under the act of 1883, and even more obviously in the general revision of the statutes in 1898, it was intended to revise and legislate upon the whole subject of the exemption which Turner societies should enjoy, and that such legislation supersedes completely and thereby in effect repeals the exemption contained in such an individual private act as that creating the plaintiff. That view has been already taken for granted, without discussion, in *Green Bay & M. C. Co. v. Outagamie Co.* 76 Wis. 587, 45 N. W. 536,. where it was assumed that the exemption of property of a Turner society was controlled by ch. 309, Laws of 1883, although that society was incorporated under a private act conferring the same right of exemption from taxation as that. incorporating the plaintiff.

2. The next subject of inquiry is whether the building of the plaintiff is shown to have been used exclusively for educational purposes within the terms of subd. 23, sec. 1038, Stats. 1898. Such property is a single indivisible building of which certain portions of the street frontage are leased for commercial purposes in no wise connected with education except that the rents for such. occupancy go into the general treasury of the society and are devoted to the payment generally of its expenses, including, of course, the interest upon

its indebtedness, and, perhaps, so far as there is any surplus, to reduction of the principal, which was doubtless incurred for the purpose of providing the building in which the society's educational functions are accomplished, as also any social or other purposes which it may have.   On the part of the respondent it is contended that the words "exclusively used for educational purposes" can only be satisfied by the direct physical use of the property itself in the work of education, while on the part of the appellant it is contended that they may be satisfied by the use of profits or earnings of such property in support of education.   Thus the somewhat narrow and concrete question is presented.   Doubtless the natural and exact meaning of the words would be in accord with the respondent's contention.   A building which is used for a saloon is not in the exact sense of the words used for educational purposes, and can be brought within such words only by according them something broader and more liberal than their literal expression.

Of course, we start with the general proposition that such statutes according exemption from taxation are to be strictly construed, and understood to confer exemption only so far as their words, by their natural and necessary meaning, go. *Katzer v. Milwaukee,* 104 Wis. 16, 80 N. W. 41.   This rule alone would seem sufficient to preclude appellant's contention, but there are other considerations which tend to confirm the more limited scope of the exemption.   In ascertaining the meaning of words there is a natural presumption that they are used by the legislature in the same sense as the same words elsewhere in the same statute.   We find in sec. 1038, Stats. 1898, exemption of property of various classes of owners when the same is exclusively devoted to or used for certain defined purposes.   Thus, in subd. 4, lands owned and used by the state or any county agricultural society exclusively for fair grounds; in subd. 5, buildings and ground owned by organized fire companies and used exclusively for

their proper purposes; in subd. 17, property of fair associations while used exclusively for fairs and exhibitions; in subd. 20, property of private corporations for care of the insane used exclusively for such purposes; and in subd. 22, the property of any corporation used exclusively for the purpose of manufacturing zinc oxide. Now, in many of these instances it would obviously be inconceivable that the legislature intended to exempt property the profits or earnings of which were devoted to the purposes named. In case, for example, of the private insane asylums, which are corporations which may be organized with capital stock and for pecuniary profit, it would be absurd to exempt property not itself used for that purpose, such as stores or rented farms, merely because the income thereof is devoted to the maintenance of the insane asylum. That would only result indirectly in applying such proceeds to the personal profit of the stockholders, either presently or prospectively. But if the words "exclusively used" are in such subdivision clearly intended to be limited to the physical use of the property itself, why must we not presume that the like words were used with the same meaning in subd. 23, relating to Turner societies? If appellant's construction of such words be adopted, the kinds of property and, in many cases, the amount which may be exempted is without limit. Commercial blocks, office buildings, vessels, and farms, as also bonds and mortgages, not distinguishable in their physical use or employment from other like property, may be held exempt from the usual burdens of taxation provided only that their net profits or earnings be devoted to the favored purposes, some of which, as already shown, are ultimately purely mercenary. Such result would, we think, greatly surprise the framers of these various exemption provisions in our statutes. From such considerations we are convinced that all reason is against appellant's construction.

The only authority cited conflicting with this view is *North*

*St. L. G. Soc. v. Hudson,* 12 Mo. App. 342, affirmed in 85 Mo. 32, which is identical with the present case in all material particulars. That case seems to stand entirely alone. It was decided by two of three commissioners without participation by any of the justices of the supreme court. No authority is cited to support the conclusion. It seems to us to be in direct conflict with the holding of the supreme court of that state in *Wyman v. St. Louis,* 17 Mo. 335, where it was decided that a building, of which the upper stories were occupied as a school and the lower story was rented for commercial purposes, was not exempt under a statute requiring that the building should be used for school purposes. The *Gymnastic Society Case* has apparently never been cited or approved in Missouri, but is in principle repudiated in *Fitterer v. Crawford,* 157 Mo. 51, 57 S. W. 532, where exemption was denied to a Masonic hall of which the ground floor was rented and the proceeds applied to the purposes of the society, on the ground that the building was not used exclusively for charitable purposes, although the purposes of the Masonic society were held to be charitable. We think this last case overrules the earlier one, and deprives it of authority even in Missouri.

Elsewhere throughout the country an array of authorities far too numerous for complete citation sustain the view that under a statute limiting exemptions to property "used for," "devoted to," or "used exclusively for" a specified purpose, a devotion of the income of such property to such favored purpose is not sufficient, but that the statutes require the primary physical use therefor of the very property for which exemption is claimed. The following may be mentioned: *Indianapolis v. Grand Lodge,* 25 Ind. 518; *Hibernian Ben. Soc. v. Kelly,* 28 Oreg. 173, 42 Pac. 3; *St. Mary's College v. Crowl,* 10 Kan. 442; *Morris v. Masons,* 68 Tex. 698, 703, 5 S. W. 519; *Cincinnati College v. State,* 19 Ohio, 110; *State ex rel.*

*Adm'rs v. Board of Assessors,* 35 La. Ann. 668; *County Comm'rs v. Sisters of Charity,* 48 Md. 34; *Louisville v. Board of Trade,* 90 Ky. (2d ed.) 409, 14 S. W. 408; *Trustees v. Boston,* 120 Mass. 212; *Auburn v. Y. M. C. A.* 86 Me. 244, 29 Atl. 992; *People ex rel. Gore v. Y. M. C. A.* 157 Ill. 403, 41 N. E. 557; *Trustees v. Exeter,* 58 N. H. 306; *Y. M. C. A. v. Donohugh,* 13 Phila. 12. We find nothing in Wisconsin to conflict with this volume of authority elsewhere. Appellant urges on our notice *St. Joseph's Hosp. Asso. v. Ashland Co.* 96 Wis. 636, 72 N. W. 43, but that case dealt wholly with the construction of the phrase "used for pecuniary profit" found in subd. 3, sec. 1038, Stats. 1898, and is without applicability to the present subject.

Our attention is called to several cases holding that temporary letting of a building or a hall, the whole of which is actually occupied and used for charitable or educational purposes, is not inconsistent with its exclusive use within a statute like ours; as, for example, the letting of seminary buildings for hotel purposes during the vacation, or the letting of a Masonic or other hall for lectures when not required for the uses of the society owning it (*Temple Grove Sem. v. Cramer,* 98 N. Y. 126; *St. Mary's Church v. Tripp,* 14 R. I. 307; *First U. Soc. v. Hartford,* 66 Conn. 368, 34 Atl. 89; *Philadelphia v. Barber,* 160 Pa. St. 123, 28 Atl. 644); also to cases where parts of school buildings or charitable establishments are used for living rooms by teachers, workers, or janitors, without destroying the exemption (*People ex rel. Cairns v. Murray,* 148 N. Y. 171, 176, 42 N. E. 584). There may well be legitimate distinction between such use incidental to and promotive of the main purpose for which a building is primarily devoted and the permanent leasing of parts of the building for uses having no relation to the owner's principal purpose; but neither the existence nor exact location of any such line of distinction need be considered or decided in this case, for the

leasing of the saloon and barbershop, we are convinced, precludes the conclusion that the building in question is exclusively used for educational purposes.

3. An opinion filed by the trial judge suggests a severance of the property in some way so that part may be taxed and part exempted. Counsel on both sides seem to concede the impossibility of such act, and we think advisedly. The property in question is a single nonseverable building together with the ground on which it stands. Only when the "property" is exclusively used for educational purposes can it be exempt at all. It seems obvious that a single indivisible piece of property cannot, in any proper sense, be exclusively so used when parts of it are permanently occupied for other purposes. True, some courts have held that there might be a valuation and assessment of the part used for noneducational purposes, but usually by virtue of some procedure for severance authorized by legislation. The weight of authority is, however, the other way. *Wyman v. St, Louis,* 17 Mo. 335; *St. Mary's College v. Crowl,* 10 Kan. 442. With that view this court is in accord, so far as it has spoken. Thus, in *Phelps v. Rooney,* 9 Wis. 70, it was held that a part of a building occupied as a homestead could not be severed from parts not so used, as a store on the first floor, for the reason that the part not used as a homestead could not be sold on execution consistently with the practical retention and enjoyment by a debtor of the living rooms above and the ground beneath. In that case we repudiated a contrary holding in Iowa (*Rhodes v. McCormick,* 4 Iowa, 368), whereby, in the words of a witty writer, the home of a family was "hung in the air like the nest of a bird." Again, in *Milwaukee & St. P. R. Co. v. Crawford Co.* 29 Wis. 116, 125, where part of a building was used for proper railway purposes and part not, it was declared impracticable to sever for purposes of taxation. That is obviously so under our present laws for levy and enforcement of taxes on real estate which provide no rule or process for either valuing or

selling any fractional interest or any, other than vertical, section of land with a single building upon it. *Merrill R. & L. Co. v. Merrill,* 119 Wis. 249, 96 N. W. 686. Until some such provision is made we must hold that the whole of an indivisible building, and the ground on which it stands, is subject to taxation unless the whole is rendered exempt by being used exclusively for educational purposes in the natural and exact significance of those words.

The views thus announced absolve us from consideration of several argued or suggested questions, such as the strictly educational character of Turner societies; the constitutionality of individual exemptions from taxation by private laws; also the validity and effect of certain portions of the Milwaukee charter. We therefore leave them untouched.

*By the Court.*—Order appealed from is affirmed.