MADISON PARTICULAR COUNCIL OF ST. VINCENT DE PAUL
    SOCIETY, Respondent, vs. DANE COUNTY and others,
    Appellants.

*November 13—December 19, 1944.*

For the appellants there was a brief by *Harold E. Hanson,* city attorney of Madison, and *Norris E. Maloney,* district attorney of Dane county, and oral argument by *Mr. Hanson.*

For the respondent there was a brief by *Spohn, Ross, Stevens & Lamb* of Madison, attorneys, and *Henry V. Kane* of Milwaukee of counsel, and oral argument by *Frank A. Ross.*

FOWLER, J. The respondent, a nonstock corporation organized for charitable purposes, sued to have the taxes levied in 1943 against real estate to which it holds legal title declared void and the apparent lien of the tax thereon removed as a cloud on its title, and to have the tax authorities enjoined from attempting to enforce collection of the tax and from assessing the property in the future. The basis of the action is the claim that the property is exempt from taxation under sec. 70.11 (4), Stats. The court, on trial to the court without a jury, granted judgment as prayed in the complaint.

The respondent is affiliated with the St. Vincent de Paul Society which was organized in Paris in 1833 as a purely religious and charitable association. The charitable feature of the St. Vincent de Paul Society was recognized by this court in *Milwaukee County v. Stratford,* 245 Wis. 505, 15 N. W. (2d) 812. All of its members are members of the Roman Catholic church. The society's operations are practically world-wide. The respondent corporation was organized by one of its local units for convenience in carrying on its charitable work. Its members are members of the Roman Catholic churches of the city of Madison. The purpose and object of the St. Vincent de Paul Society is to furnish without cost necessities to poor persons who are unable to pay for them, and its net income is devoted wholly to that end. The articles of the respondent corporation provide that "no divi-

dend or pecuniary profit shall be declared or at any time paid to any of its members."

Sec. 70.11 (4), Stats., so far as here material, declares exempt from taxation—

"Personal property owned by any . . . religious . . . or benevolent association . . . which is used exclusively for the purposes of such association, and the real property necessary for the location and convenience of the buildings of such . . . association and embracing the same, not exceeding ten acres; provided, such real or personal property is not leased or otherwise used for pecuniary profit."

The property of the respondent is a lot sixty-six feet wide. On it is a one-story building divided into three rooms in which it conducts what it calls a "salvage bureau." The appellants claim that this "salvage bureau" is a "secondhand store" and that the real estate on which it is located should be taxed, as is the real estate on which any other "secondhand store" is located. The evidence is without dispute as to just what the respondent does on its property. It receives gifts of clothing, furniture, and discarded articles of all sorts. The articles are distributed to the poor so far as there is demand therefor. The demand of the poor is largely for food, rent, and fuel, and for articles not contributed. So far as not required for physical distribution the articles contributed are sold. The proceeds of the sale and contributions of money are used to buy articles not contributed for which poor persons have need. No person is required to pay for articles unless able, but if able to pay in part he is required to pay so far as able. No member of the corporation receives any compensation for services or otherwise, except that the president of the corporation who devotes all his time to management of its business receives a salary which has ranged from $85 to $125 per month. A large source of cash income is from other Wisconsin units of the St Vincent de

Paul Society. Collections are taken at the meetings of the respondent and at meetings of the local conference of the St. Vincent de Paul Society.

The appellants in support of their contention for nonexemption rely particularly on *Gymnastic Asso. v. Milwaukee,* 129 Wis. 429, 109 N. W. 109; *Northwestern Publishing House v. Milwaukee,* 177 Wis. 401, 188 N. W. 636; and *Cardinal Publishing Co. v. Madison,* 208 Wis. 517, 243 N. W. 325. The respondent in support of its contention for exemption relies particularly on *Catholic Woman's Club v. Green Bay,* 180 Wis. 102, 192 N. W. 479; *Order of the Sisters of St. Joseph v. Plover,* 239 Wis. 278, 1 N. W. (2d) 173; and *State ex rel. State Asso. of Y. M. C. A. v. Richardson,* 197 Wis. 390, 222 N. W. 222.

In the *Gymnastic Asso. Case, supra,* one part of the property involved was rented for a saloon and another part for a barbershop. The rest was used for the general purposes of the plaintiff. The ground of claim for exemption was that the owner of the taxed property was an organization for educational purposes. Sub. 23, sec. 1038, R. S. 1898, provided for exemption from taxation of property "used exclusively for educational purposes." The leased property obviously was not so exclusively used, even though the avails of the leases were. The business carried on in the leased premises bore no relation to education or the furthering thereof. In the *Cardinal Publishing Co. Case,* which is based largely on the *Gymnastic Asso. Case, supra,* the plaintiff, although organized for and devoting its income to educational activities of the University of Wisconsin, used the taxed property in part for printing two local newspapers and a high-school paper, and it was these uses that were held to take it out of the statute. Over ten per cent of its income was received from these sources. This was held to be a "substantial" rather than an "incidental, negligible or inconsequential" part of its income which latter had been held

in the case of *Northwestern Publishing Co. v. Milwaukee, supra,* not to render property used for educational purposes nonexempt. The income there received from the taxed property that was there held not to take the property out of the statute was only .002 per cent. In the instant case the part of respondent's income received from its sales for the year 1943 was $6,379, while its income from cash donations was $2,326. Thus its income from sales was "substantial." It may be said to have been "incidental" to the main purpose of respondent but it must be said that it was neither "negligible" nor "inconsequential." It would thus seem that the rule of the *Cardinal Publishing Co. Case, supra,* renders the instant property taxable unless the circumstances other than sales take it out of the rule of the cases relied on by the appellants and bring it within the rule of the cases relied on by the respondent.

Taking up the cases on which the respondent relies the broad proposition laid down in the *Gymnasium Asso. Case, supra,* was departed from in the case of *Catholic Woman's Club v. Green Bay, supra.* The plaintiff in that case was a nonstock corporation engaged in "promoting charity, benevolence, education, and fraternity." See opinion, page 104. The "fraternity" use of the taxed property was use of its building as a clubhouse and use by members and nonmembers who were permitted to use it for their convenience while shopping or in the business part of the city for other purposes. The educational feature was the conduct of a day nursery therein and giving instruction in dancing in its auditorium. The plaintiff rented rooms to women and rented its auditorium to various Catholic lodges and to private dancing parties. These various uses not related to the main purposes of the plaintiff were a much further departure from the benevolent and charitable purposes of the Catholic Woman's Club of Green Bay than is the sale of articles by the respondent corporation, and the income received through

them must have been "substantial" and neither "negligible" nor "inconsequential." This case followed the *Gymnastic Asso. Case, supra,* and the *Gymnastic Asso. Case* is cited in the list of cases, page 104, considered by the court in deciding it, so that the decision was clearly made with the *Gymnastic Asso. Case* fully in mind. The decision was based upon the general object and purpose of the exemption statute, which is stated by the court, page 104, as follows:

"The statute of exemptions for taxation, upon which respondent relies, is not difficult of construction. Its intent is plain. It would encourage benevolence, charity, religion, education, and fraternity. It recognizes these qualities of mind and character as essential to a well-ordered state whose principal object is the general welfare or common good. Respondent is a corporation engaged in promoting charity, benevolence, education, and fraternity—not one but nearly all of the objects of the statute. Its property has been wholly acquired by charitable gifts. It makes no profits for any purpose. Its receipts are all devoted to its general purposes above enumerated. No dividend has ever been declared, nor is any in contemplation.

"To deny that the respondent comes within the statute of exemptions, sub. (4), sec. 70.11, is to deny the purpose of the statute. There are several decisions of this court applying the statute to particular facts of the cases presented. Each case depends upon its particular facts."

The instant case falls within the general statement above quoted. In the *Catholic Woman's Club Case, supra,* it is manifest that the religious character of the organization— only Roman Catholics being permitted to membership in the corporation, as here—was a circumstance considered as distinguishing the case from the *Gymnastic Asso. Case, supra.* This also constituted a distinguishing feature in *State ex rel. State Asso. of Y. M. C. A. v. Richardson,* and *Order of the Sisters of St. Joseph v. Plover, supra,* and it was one of the main reasons for the original adoption of the rule of those

cases in *St. Joseph's Hospital Asso. v. Ashland County*, 96 Wis. 636, 72 N. W. 43.

The instant case falls more exactly within the principles applied in the case last above stated than within those of the *Cardinal Publishing Co.* or *Gymnastic Asso. Cases, supra*. It is quite like, in principle, the hospital cases, which involve hospitals maintained for the charitable purpose of care of sick and injured poor persons. The last such case is that of the *Order of the Sisters of St. Joseph v. Plover, supra*. It is said in the opinion of the latter, page 281, that the "hospital is conducted by a Roman Catholic religious sisterhood. No member of the sisterhood employed in any manner in its operation receives any compensation for her services." The same is true here, except that those constituting the religious body are men devoting part time instead of women devoting their entire time to the work of the association. It is also said in that opinion, page 283, "as the profit made by these institutions [hospitals], if any, is payable to nobody, but is only turned back into improving facilities or extending the benevolence in which the institutions are primarily engaged, the profit element becomes immaterial." So here.

As making the religious feature of the instant case more clear, the general setup in the United States of the Society of St. Vincent de Paul may be stated in addition to what is hereinbefore stated. As appears from the undisputed evidence, the society has in New York city what is called a "Superior Council." This has jurisdiction over "Metropolitan Councils" in metropolitan areas. One of these is in Milwaukee. It covers the Milwaukee archdiocese of the Roman Catholic church. It has jurisdiction over local "Particular Councils." One of the latter is in Madison. It consists of "conferences" consisting of five Roman Catholic parishes of the city of Madison. These conferences, as do all units of the general society, consist of Catholic men, operating in their parishes, who realize the needs of the

destitute in their respective parishes. The conferences have a pastor of some parish assigned to it as a spiritual advisor. It is definitely a religious organization. The members of the local conferences spend their spare time in ministering to the poor. They constitute the "Particular Council." The instant corporation is not the local "Particular Council"—it is only an arm of it. It is the business end of the "Particular Council."

Bearing in mind, as said in the *Catholic Woman's Club Case, supra,* that "each case [under the statute] depends upon its particular facts" and that it is engaged in promoting, "not one but nearly all of the objects of the statute," more particularly charity and religion, we conclude that the judgment of the circuit court must be affirmed. To reverse the case would in effect overrule the cases above cited relied on by the respondent and, as said in the *Catholic Woman's Club Case,* would "deny the purpose of the statute."

*By the Court.*—The judgment of the circuit court is affirmed.