COURT OF APPEALS
DECISION
DATED AND FILED

March 17, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP778**

STATE OF WISCONSIN

Cir. Ct. No. **2018CV4807**

IN COURT OF APPEALS
DISTRICT I

CENTRAL UNITED METHODIST CHURCH,

PLAINTIFF-APPELLANT,

V.

CITY OF MILWAUKEE,

DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Milwaukee County: PAUL R. VAN GRUNSVEN, Judge. *Reversed.*

Before Brash, P.J., Dugan and Donald, JJ.

¶1 DONALD, J. Central United Methodist Church (Central United) appeals a summary judgment denying its request for a tax refund from the City of Milwaukee. The circuit court concluded that Central United had not shown that it uses its property exclusively for benevolent purposes as required by the relevant

exemption statute, WIS. STAT. § 70.11(4) (2017-18).[1]  Central United argues that the circuit court erred in its conclusion.  Based on the facts of the record, we agree with Central United and reverse the circuit court.

## BACKGROUND

¶2      Central United is a non-profit church located at 639 North 25th Street in the City of Milwaukee.  Central United holds worship services and provides multiple religious, educational, social, and recreational activities and programs.  The church staff consists of one pastor, one part-time assistant, and one caretaker who maintains the church building and parking lot and resides at the church.  The church is dependent on volunteers for extra services and is dependent on donations to maintain its operations.

¶3      Central United's campus consists of its church building and an adjacent parking lot, holding forty-three stalls.  The parking lot is available for free to anyone attending the church for any of its various programs.  The church campus is in close proximity to The Rave/Eagles Club, a popular Milwaukee concert venue.

¶4      In 2012, neighborhood residents began charging concert-goers for use of Central United's parking lot, claiming to be owners of the property.  In response, members of the church chained off the parking lot to prevent those attending events at The Rave/Eagles Club from using the parking lot.  The effort was to no avail, as neighborhood residents continued to charge entrance fees for use of Central United's parking lot and other disturbances began to occur.  Central United then organized unpaid volunteers from the congregation to monitor the parking lot and

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

to allow concert-goer parking in exchange for a donation to the church. Approximately four times a month, volunteers held up signs reading "Parking $10.00 donation." Most users paid the $10.00, however volunteers also allowed concert-goers to donate on a sliding scale or not donate at all.

¶5 In 2016, Central United collected $15,672 from parking donations. In 2017, Central United collected $22,856 from parking donations. Donations from the parking lot were included in Central United's 2017 and 2018 budgets. Central United budgeted $12,000 in 2017 and $16,750 in 2018 for parking donations.

¶6 In September 2017, the City of Milwaukee notified Central United that its assessor's office changed the parking lot's classification from "exempt" to "local mercantile." The City assessed the lot's value at $146,000, resulting in a tax bill of $4416.20. Central United submitted an unlawful tax claim against the City, which the City disallowed. Central United then filed the complaint underlying this appeal, seeking a declaration under WIS. STAT. § 74.35(2m) that the parking lot was tax exempt under WIS. STAT. § 70.11(4), the statute allowing tax exemptions for benevolent institutions, among others. *See id.* Central United also sought recovery of taxes paid.

¶7 The parties filed for summary judgment. At a hearing on the motions, the parties disagreed over whether Central United's parking lot qualified as a tax exempt property under the guidelines set forth by *Waushara County v. Graf*, 166 Wis. 2d 442, 480 N.W.2d 16 (1992). In that case, the Wisconsin Supreme Court stated:

> To qualify as a "church" or "religious association" entitled to tax exempt status under [WIS. STAT. §] 70.11(4), a taxpayer must pass five statutory tests: (1) the taxpayer must be a bona fide church or religious association; (2) the property must be owned and used exclusively for the

purposes of the church or religious association; (3) the property involved must be less than 10 acres; (4) the property must be necessary for location and convenience of buildings; and (5) the property must not be used for profit.

*Id.* at 457. The City argued that because the lot was being used for concert-goers, Central United did not use the parking lot exclusively for purposes of the religious association as required by case law and WIS. STAT. § 70.11(4). Central United argued that the parking lot donation revenue was used for benevolent purposes, thus entitling Central United to the tax exemption it sought under § 70.11(4). Even if the lot was not used exclusively for benevolent purposes, Central United argued, any use of its parking lot by concert-goers was simply an incidental use of the property.

¶8 Ultimately, the circuit court agreed with the City. In a written decision, the circuit court stated:

> [P]roviding parking to concertgoers, even for "donations," is not the type of benevolent or charitable use considered by the statute. This use of the property does not accrue benefits to mankind directly nor does it relieve the state from expenses, as providing free flu shots to the poor would. Rather, providing paid parking for Rave/Eagle's Club concertgoers constitutes non-exempt commercial activity.
>
> ….
>
> Here, [Central United] offers parking for Rave/Eagle's Club events approximately 4 times per month, or 48 times per year. In 2016, [Central United] recorded annual parking revenue of $15,672.00. For 2017, the parking income increased to $22,856.00. The parking income was included in [Central United's] budgets for 2017 and 2018. For 2017, [Central United] budgeted $12,000.00 in parking income, which was 9.4% of its total income. However, with a total anticipated income of $127,925.00, the actual parking income for 2017 ended up constituting approximately 18% of [Central United's] total income. For 2018, it budgeted $16,750.00, which was 12.3% of total income.
>
> Given precedent established in [case law], the [c]ourt cannot reasonably conclude that income from non-exempt

4

activities totaling between 12 and 18% of total annual income is merely inconsequential or *de minimus*. Consequently, [Central United] has not satisfied the minor exception to the "exclusive use" requirement of WIS. STAT. § 70.11(4). Therefore, as [Central United] has not met its burden of establishing it exclusively uses its parking lot for exempt purposes, as required by the statute, the lot is taxable for the time period at issue.

This appeal follows.

## DISCUSSION

¶9 On appeal Central United argues that "[c]ollecting donations in the parking lot is a use exclusively for the purposes of Central United." In the alternative, Central United argues that collecting donations from concert-goers using the parking lot is an incidental use of the property, rendering the tax exemption still applicable.

¶10 We review summary judgments *de novo*, using the same methodology as the circuit court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315-17, 401 N.W.2d 816 (1987). That methodology is well established and need not be repeated here. *See, e.g.*, *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶20-24, 241 Wis. 2d 804, 623 N.W.2d 751. When facts are stipulated, all that remains is a question of law. *Lewis v. Physicians Ins. Co. of Wis.*, 2001 WI 60, ¶9, 243 Wis. 2d 648, 627 N.W.2d 484. Moreover, asking this court to determine whether certain property is exempt from property taxes necessarily requires us to construe WIS. STAT. § 70.11. *See Deutsches Land, Inc. v. City of Glendale*, 225 Wis. 2d 70, 79, 591 N.W.2d 583 (1999). Statutory construction is a question of law which we also review independently. *See id.* at 79-80.

¶11 Property is presumed taxable. *Id.* at 80. Exemptions from taxation are matters of legislative grace and, as such, we apply a "strict but reasonable

5

construction" to exemption statutes. *Id.* (citation omitted). The party seeking exemption bears the burden of proving it falls within one of the statutes, and any doubt is resolved against the party seeking exemption. *Id.* at 80-81.

¶12    WISCONSIN STAT. § 70.11 lists several types of property exempt from taxation. Central United specifically argues that it is entitled to an exemption under § 70.11(4). That section exempts, among other things, "[p]roperty owned and used exclusively by ... benevolent associations[.]" To qualify for total exemption under that subsection, an organization must show that it (1) is a benevolent association, (2) owns and exclusively uses the property, and (3) uses the property exclusively for exempt purposes. *See Deutsches Land*, 225 Wis. 2d at 81-82. For purposes of the statute, an exempt purpose is synonymous with a benevolent purpose. *Id.* at 85. The dispute in this case centers on whether Central United "exclusively uses" its parking lot for "benevolent purposes," or whether the use at issue qualifies as "incidental," rendering the exemption applicable even if the use is not exclusively for benevolent purposes.

¶13    Relying primarily on *Deutsches Land* and *Cardinal Publishing Co. v. City of Madison* (*Cardinal Publishing II*), 208 Wis. 517, 519, 243 N.W. 325 (1932), the circuit court found that the amount of times per year that Central United permitted concert-goers to use its parking lot, combined with the revenue brought in by the donations, did not amount to an inconsequential use, thereby rendering the property taxable. We disagree and conclude that use of Central United's parking lot by attendees of events at The Rave/Eagles Club is incidental and the subsequent donations collected from the attendees are incidental as well. Accordingly, Central United is entitled to a property tax exemption.

¶14     The circuit court did not address the issue of incidental use, which focuses primarily on whether the use at issue is incidental to the "main purpose for which a building is primarily devoted[.]" *See Gymnastic Ass'n of South Side of Milwaukee v. City of Milwaukee*, 129 Wis. 429, 437, 109 N.W. 109 (1906). Rather, the circuit court focused on whether parking lot revenue, resulting from concert-goer use, was inconsequential to the functioning of the church. Such an inquiry focuses primarily on how substantial the use was. *See id.* Recognizing the difference between incidental use and inconsequential use allows us to distinguish the relied upon cases from the case at bar.

¶15     In *Deutsches Land*, our supreme court addressed the question of whether property owned by benevolent associations devoted to the preservation of German culture was entitled to exemption from property taxes under WIS. STAT. § 70.11(4) (1995-96). *Deutsches Land*, 225 Wis. 2d at 76. The City of Glendale argued that Deutsches Land did not satisfy the "used exclusively" requirement of § 70.11(4) because Bavarian Waldhaus, Inc., a for-profit corporation created and owned by the benevolent associations to isolate their for-profit activities, used some of the property to host for-profit corporate picnics on approximately twenty occasions annually. *Deutsches Land*, 225 Wis. 2d at 77, 82. Deutsches Land provided evidence of this usage, but did not offer anything more than testimony of benevolent association members to describe how the property was used during the remaining 345 days of the year. *Id.* at 86-87. Our supreme court held that the property was not exempt, stating, that there is "a legitimate distinction between use that is 'incidental to and promotive of the main purpose for which a building is primarily devoted and the permanent leasing of parts of the building for uses having no relation to the owner's principal purpose.'" *Id.* at 83-84 (citation omitted). In essence, the *Deutsches Land* court recognized the principle that "inconsequential

7

or incidental uses of the property for gain" did not destroy an exemption calling for "exclusive" use. *See id.* (citation omitted); *see also **Village of Lannon v. Wood-Land Contractors, Inc.***, 2003 WI 150, ¶45, 267 Wis. 2d 158, 672 N.W.2d 275. It also recognized that, in general, the relevant question is: "How consequential was the questionable activity when compared to the total activity on the property?" ***Deutsches Land***, 225 Wis. 2d at 84. It concluded that this "fact-specific question can only be answered on a case-by-case basis." ***Id.*** In other words, our supreme court held that the "exclusive use" requirement of § 70.11(4) does not mean that to qualify for an exemption a property must be solely used for benevolent purposes. Its decision to deny an exception to Deutsches Land was significantly based on the fact that Deutsches Land failed to prove, what, if any, amount of the remaining 345 days of the year Deutsches Land used the property for benevolent purposes.

¶16  Unlike the fact scenario in ***Deutsches Land***, Central United introduced evidence demonstrating its benevolent use of the property all throughout the year for various programs and activities. Moreover, Central United does not own a for-profit corporation to isolate any for-profit activities, nor does Central United lease out the parking lot to hold for-profit activities. Indeed, Central United only began collecting donations for parking spaces after others, not affiliated with the church, began profiting from the spaces. In response to the unauthorized use of its parking lot, Central United organized unpaid volunteers to collect donations on concert nights. Volunteers held up signs with a suggested donation amount, however, concert-goers were not required to make donations to use the parking spots. The circuit court found the frequency with which Central United held its lot out for concert parking to be consequential to its determination; however, that Central United collected donations in this manner four times a month is not relevant

to a determination of whether this type of property use was incidental. Indeed, the *Deutches Land* court even noted that:

> In many situations a benevolent association will demonstrate that its use of the property is so pervasive that the association should be treated as if it is in continual use of the property. That is to say, a school will likely not receive only a 75% exemption because classes are not held in the summer months.

*Id.*, 225 Wis. 2d at 85. The use at issue stemmed solely from the fact that Central United's proximity to a concert venue was leading to the unauthorized use of its parking lot. Central United simply took advantage of the grace of proximity—approximately four times a month—and found a way to benefit from use that was already occurring. Such use does not undermine Central United's use of its property for benevolent purposes all throughout the year. This use was incidental.

¶17 We also conclude that the circuit court's reliance on *Cardinal Publishing* is inapplicable to our incidental use determination. In *Cardinal Publishing II*, our supreme court found that a university student newspaper deriving twenty percent of its income one year and ten percent the following year from nonexempt purposes was not negligible, and therefore was not tax exempt. *Id.*, 208 Wis. at 519. In the predecessor case to *Cardinal Publishing II*, *Cardinal Publishing I*, our supreme court held:

> If there is no segregation of property and devotion of a portion of it to purposes outside of the corporate objects, but if the whole property in a physical sense is primarily devoted to the purposes of the organization, then the fact that there are occasional or incidental uses of the property for gain, which is devoted to the purposes of the society claiming the exemption, will not destroy the exemption.

*Cardinal Publishing Co. v. City of Madison*, 205 Wis. 344, 347-48, 237 N.W. 265 (1931).

¶18    Relying on the facts of the *Cardinal Publishing* cases, the circuit court found that the revenue derived from Central United's parking lot was not *inconsequential* based on the percentage of income the parking lot brings into the church.  What the circuit court did not take into account, however, is the principle articulated in *Cardinal Publishing I*, which supports our conclusion that the revenue brought in from Central United's use of the parking lot is *incidental* revenue.

¶19    In fact, our supreme court has previously addressed a similar issue when it held that a property was exempt under WIS. STAT. § 70.11(4) even though the challenged use resulted in income that was not inconsequential.  In *Madison Particular Council of St. Vincent De Paul Society v. Dane County*, 246 Wis. 208, 209, 16 N.W.2d 811 (1944), the St. Vincent de Paul Society sought a property tax exemption under § 70.11(4) for a building which it referred to as its "salvage bureau."  *St. Vincent De Paul Soc.*, 246 Wis. at 209-10.  St. Vincent received donations of clothing, furniture, and other miscellaneous items at the salvage bureau, which were distributed to those in need.  *Id.* at 210.  However, there were many items received for which there was no need; at the same time, there was a great need for items that were not regularly donated, such as food, fuel, and money for rent.  *Id.*  Therefore, St. Vincent engaged in selling donated items that were not directly distributed, and used those proceeds to buy items that were needed by the people it served.  *Id.*  The supreme court noted that the income St. Vincent received from selling donated items in 1943 was $6379, while its income from cash donations was $2326.[2]  *Id.* at 212.  Thus, the court recognized that this income was "neither

---

[2] Assuming the total of these amounts was St. Vincent's entire income for 1943, the portion attributed to the sale of donated items accounted for approximately 73% of its income that year.

'negligible' nor 'inconsequential.'" *Id.* Nevertheless, the supreme court held that the use of the building to sell donated items was within the purpose of WIS. STAT. § 70.11(4). *St. Vincent De Paul Soc.*, 246 Wis. at 214. The profits made by St. Vincent were "payable to nobody," but rather were "turned back into improving facilities or extending the benevolence in which the institution[] [is] primarily engaged"; thus, "the profit element [was] immaterial." *Id.* (citation omitted). In other words, this use of the building was incidental to St. Vincent's benevolent works, and therefore exempt under § 70.11(4).

¶19    Applying the rationale articulated in *St. Vincent De Paul Society*, we conclude that the only distinguishing factor between donations brought in from Central United's parking lot and donations brought in from other sources, such as individual donations, bake sales, or car washes, is that the parking lot donations bring in a significant amount. Central United's use of the parking lot donation revenue is the same as its use of donations from the other sources. All donations support the functioning of the church and its many activities, ranging from community support groups, to food pantries and mission trips, to children's activities, to Bible school. Therefore, while the amount brought in by the parking lot use may not necessarily be inconsequential, as the circuit court found, it certainly is incidental.

¶20    For the foregoing reasons, we reverse the circuit court's grant of summary judgment to the City of Milwaukee and conclude that Central United's parking lot is tax exempt. Accordingly, Central United is entitled to recovery of taxes paid.

                    *By the Court.*—Judgment reversed.

                    Not recommended for publication in the official reports.