DEUTSCHES LAND, INC., Plaintiff-Respondent-Petitioner,†

v.

CITY OF GLENDALE, Defendant-Appellant.

Supreme Court

*No. 96–2489. Oral argument September 9, 1998.—Decided April 16, 1999.*

(Also reported in 591 N.W.2d 583.)

†Motion for reconsideration denied June 30, 1999.

For the plaintiff-respondent-petitioner there were briefs by *Hugh R. Braun, Jeffrey L. Janik* and *Godfrey, Braun & Frazier*, Milwaukee and oral argument by *Hugh R. Braun.*

For the defendant-appellant there was a brief by *John F. Fuchs*, City Attorney, *Alan Marcuvitz, Robert L. Gordon* and *Weiss, Berzowski, Brady & Donahue, LLP*, all of Milwaukee and oral argument by *Robert L. Gordon.*

Amicus curiae was filed by *Sandra Stone Ruffalo*, Milwaukee, for the Milwaukee Turners, Inc.

Amicus curiae was filed by *Dominic H. Frinzi*, Milwaukee, for the Italian Community Center, Inc.

Amicus curiae was filed by *Grant F. Langley*, city attorney, *Gregg C. Hagopian*, assistant city attorney, *Curtis A. Witynski* and *League of Wisconsin Municipalities, John E. Meyer* and *Wisconsin Association of Assessing Officers*, all of Milwaukee, for the City of Milwaukee, League of Wisconsin Municipalities and Wisconsin Association of Assessing Officers.

¶ 1. ANN WALSH BRADLEY, J. The petitioner, Deutsches Land, Inc. (Deutsches Land) seeks review of a published decision of the Court of Appeals[1]

---

[1] *Deutsches Land v. City of Glendale*, 215 Wis. 2d 549, 573 N.W.2d 535 (Ct. App. 1997) (reversing judgment of Circuit Court for Milwaukee County, William J. Haese, Judge).

which reversed the circuit court's grant of exemptions from real property taxes. Deutsches Land argues that as a benevolent association its property is entitled to exemption from Wisconsin property taxes under Wis. Stat. § 70.11 (1995–96).[2] Because we find that Deutsches Land has not offered sufficient evidence to support its requested exemptions, we affirm the court of appeals.

¶ 2. Deutsches Land is a non-stock, non-profit corporation organized in 1967 under chapter 181 of the Wisconsin Statutes. It primarily serves as a holding corporation for the real estate and fixed assets of five incorporated non-stock, non-profit benevolent associations. *See* Internal Revenue Code § 501(c)(2). These five benevolent associations—D'Wendelstoana (dancing), D'Oberlandler (dancing), Gesang Verein Bavaria (singing), Vergnuegungs Club (social), and the Bavarian Soccer Club (soccer) (collectively, "the benevolent associations")—exist for the purpose of preserving Germanic heritage and culture.

¶ 3. For the benefit of the benevolent associations, Deutsches Land holds title to roughly 14 acres of property located in the City of Glendale. Though the property officially comprises a single parcel, Deutsches Land treats this 14-acre property as if it were four "lots."[3] Two of the lots have buildings upon them and

---

[2] Unless otherwise noted, all further references to the Wisconsin Statutes will be to the 1995–96 version.

[3] The record indicates that at some time in the past Deutsches Land had taken the preliminary steps to platting and subdividing the 14 acres into four lots. For whatever reason, that process was never completed. Nevertheless, the fiction of the four lots is immaterial to our analysis for purposes of this case, and we will treat the single parcel as if it were divided in four.

the remaining two lots, totaling approximately five and one half acres, are soccer fields.

¶ 4. One of the two lots containing buildings is called "Old Heidelberg Park" which covers almost four and a half acres. Old Heidelberg Park is the site at which the benevolent associations conduct two major public festivals, Volksfest and Oktoberfest. These festivals are a significant source of fund-raising income for the benevolent associations. Additionally, a 12,000 square foot "Fest Hall" and other minor outbuildings are located in Old Heidelberg Park. Any one of the benevolent associations may use the park and the Fest Hall. In the winter months, the Fest Hall is used at various times by the soccer club for indoor practice.

¶ 5. While Deutsches Land does not officially lease the park to any entity, Deutsches Land allows Bavarian Waldhaus, Inc. (Waldhaus) to use it on approximately 20 occasions annually. Waldhaus is a for-profit corporation created by the benevolent associations to isolate their for-profit activities and owned by the benevolent associations in five equal shares. On those 20 yearly occasions, Waldhaus uses the park to host corporate picnics at which it supplies the food and beverage. The corporations that arrange with Waldhaus to hold their event in Old Heidelberg Park do not need to be, and as a rule are not, affiliated with the benevolent associations in any way.

¶ 6. The Bavarian Inn lot of four acres contains a parking area for the entire 14-acre parcel as well as a significant structure that houses the Bavarian Inn restaurant, which is a full-service, for-profit bar and banquet facility open to the general public. The Bavarian Inn building has two floors. The main floor contains a bar, dining area, and banquet hall in addition to the kitchen, rest rooms, coatroom, and other

miscellaneous space associated with a restaurant. The lower floor, which is accessible both from the main floor and from a separate outdoor entrance, is divided into three more banquet rooms (named the "Rathskeller," "Weinstube," and "Edelweiss"), the offices of the Bavarian Inn, and a storage area for the benevolent associations.

¶ 7.　Though Deutsches Land owns the land on which the Bavarian Inn sits as well as the building itself, it contracts with Waldhaus to operate the Bavarian Inn restaurant. Waldhaus has in the past entered into a formal lease with Deutsches Land for the entire Bavarian Inn building, although the lease terms required Waldhaus to allow the benevolent associations to use any part of the facility without charge. The last formal lease expired in 1990. However, the relationship between Waldhaus, the benevolent associations, and Deutsches Land has remained essentially the same since that time.

¶ 8.　The record, though not altogether clear, indicates that most areas of the Bavarian Inn are used at certain times by members of the benevolent associations and at other times by Waldhaus. For example, while the benevolent associations most often use either the Rathskeller, Weinstube, or Edelweiss for their gatherings, it is not uncommon for them to also use the banquet hall on the main floor. Similarly, while Waldhaus normally uses the facilities on the main floor, it is not uncommon for Waldhaus to occupy the Rathskeller, Weinstube, or Edelweiss for banquets. The record indicates that the only space in the Bavarian Inn used solely by the benevolent associations is the storage area in the lower level of the building. All other areas are used both by Waldhaus and the benevolent associations.

¶ 9. Although this arrangement between Deutsches Land and Waldhaus has been in place since 1967, Deutsches Land first sought an exemption from Wisconsin property taxes in 1993. Specifically, Deutsches Land now seeks a full exemption for the soccer fields and Old Heidelberg Park and a 25% exemption for the Bavarian Inn building for the years of 1993–95. Glendale denied the applications and Deutsches Land filed suit in the Circuit Court of Milwaukee County. The circuit court ruled that Deutsches Land was entitled to a full exemption on the soccer fields and Old Heidelberg Park and a 25% exemption for the Bavarian Inn building.[4]

¶ 10. Glendale appealed and the court of appeals reversed. The court of appeals determined that Deutsches Land had not satisfied the "used exclusively" requirement of Wis. Stat. § 70.11(4) and thus could not receive an exemption for Old Heidelberg Park and the Bavarian Inn lot. Citing the same subsection, it also concluded that there was no evidence in the record that the soccer fields were necessary for the location and convenience of any building that was exempt from taxation. Accordingly, it held that Deutsches Land was not entitled to a real property tax exemption on any of its property.

¶ 11. In asking this court to rule that it is entitled to an exemption from real property taxes, Deutsches Land necessarily requires us to construe Wis. Stat. § 70.11. The construction of statutes is a question of law which we review independent of the legal conclu-

---

[4] The circuit court determined that no part of the land of the Bavarian Inn lot was eligible for exemption because such an exemption would exceed the 10-acre maximum exemption of Wis. Stat. § 70.11(4).

sions reached by the circuit court and court of appeals. *Colby v. Columbia County*, 202 Wis. 2d 342, 349, 550 N.W.2d 124 (1996). While we grant deference to the circuit court's factual findings, we review *de novo* the application of those facts to the law. *Peplinski v. Fobe's Roofing, Inc.*, 193 Wis. 2d 6, 19, 531 N.W.2d 597 (1995).

¶ 12. In interpreting statutes, our primary purpose is to give effect to the legislature's intent. *State ex rel. Angela M.W. v. Kruzicki*, 209 Wis. 2d 112, 121, 561 N.W.2d 729 (1997). To this end, we look first to the language of the statute, and if that language is unambiguous, we construe the statute in accordance with its ordinary meaning. If, on the other hand, the statutory language is ambiguous, we look to the legislative history in order to ascertain both the legislature's purpose for enacting the statute and its intent as to the statute's meaning. *Stockbridge School Dist. v. Department of Public Instruction*, 202 Wis. 2d 214, 219, 550 N.W.2d 96 (1996).

¶ 13. In Wisconsin, the taxation of property is the rule and exemption is the exception. *Engineers & Scientists of Milwaukee, Inc. v. City of Milwaukee*, 38 Wis. 2d 550, 553, 157 N.W.2d 572 (1968); *Trustees of Indiana Univ. v. Town of Rhine*, 170 Wis. 2d 293, 299, 488 N.W.2d 128 (Ct. App. 1992). In general, we apply a "strict but reasonable construction" to tax exemption statutes. *Columbia Hospital Association v. City of Milwaukee*, 35 Wis. 2d 660, 668, 151 N.W.2d 750 (1967); *Madison Aerie No. 623 F. O. E. v. City of Madison*, 275 Wis. 472, 476, 82 N.W.2d 207 (1957). Since exemption from the payment of taxes is an act of legislative grace, the party seeking the exemption bears the burden of proving that it falls within a statutory exemption. *Pul-*

*sfus Farms v. Town of Leeds*, 149 Wis. 2d 797, 811, 440 N.W.2d 329 (1989). Consequently, any doubt under the "strict but reasonable" construction rule must be resolved against the party seeking the exemption. *Columbia Hospital*, 35 Wis. 2d at 668.

### Old Heidelberg Park

¶ 14. The bulk of Wis. Stat. § 70.11 delineates organizations and institutions that have the possibility of an exemption. As a threshold requirement, an organization that seeks an exemption under § 70.11 must fall within one or more of the specified categories outlined in the statute. *See Frank Lloyd Wright Foundation v. Town of Wyoming*, 267 Wis. 599, 606–08, 66 N.W.2d 642 (1954).

¶ 15. Deutsches Land seeks a total exemption from real property taxes on Old Heidelberg Park and the Fest Hall. It claims that it is entitled to such an exemption under Wis. Stat. § 70.11(4). The relevant statutory language is as follows:

> **70.11 Property exempted from taxation.**
> The property described in this section is exempted from general property taxes. . . .
> (4) EDUCATIONAL, RELIGIOUS AND BENEVOLENT INSTITUTIONS; WOMEN'S CLUBS; HISTORICAL ASSOCIATIONS; FRATERNITIES; LIBRARIES. Property owned and used exclusively by. . .educational or benevolent associations,. . .but not exceeding 10 acres of land necessary for location and convenience of buildings while such property is not used for profit. . . .

¶ 16. We have on prior occasions stated that, to qualify for a total exemption under Wis. Stat.

81

§ 70.11(4), an organization must show three facts: (1) that it is a benevolent organization, (2) that it owns and exclusively uses the property, and (3) that it uses the property for exempt purposes. *See Milwaukee Protestant Home v. City of Milwaukee*, 41 Wis. 2d 284, 293, 164 N.W.2d 289 (1969). Both Deutsches Land and Glendale are in agreement that the five associations noted above are benevolent associations for purposes of Wis. Stat. § 70.11(4).[5] However, the parties' agreement goes no further. Specifically, Glendale and Deutsches Land are in disagreement over the requirements that the property be "used exclusively" for "exempt purposes."

¶ 17. Glendale argues that Deutsches Land has not satisfied the "used exclusively" requirement of Wis. Stat. § 70.11(4) because Waldhaus used the park to host for-profit corporate picnics on approximately 20 occasions annually. The court of appeals agreed, stating that

> [s]ection 70.11(4), Stats., requires as a condition to the tax exemption it grants to "benevolent associations" that the property be "used exclusively by" those benevolent associations and not for profit. This condition is not ambiguous: the term "exclusively" brooks no exceptions.

*Deutsches Land*, 215 Wis. 2d at 554 (citations omitted). While the court of appeals' "brooks no exceptions" statement is an appealing rhetorical pronouncement,

[5] Though it does not dispute that the Bavarian Soccer Club is a benevolent association, Glendale disputes that the playing and teaching of soccer is done for a benevolent or educational purpose. We will assume, without deciding, that such activity is covered by Wis. Stat. § 70.11(4).

we ultimately cannot agree with such an interpretation.

¶ 18. The fact of the matter is that we have brooked exceptions to the requirement that exempted property be exclusively used by the benevolent organization so that the "plain intent of the statute" is not frustrated. *Catholic Woman's Club v. City of Green Bay*, 180 Wis. 102, 105, 192 N.W. 479 (1923). In *Northwestern Publishing House v. City of Milwaukee*, 177 Wis. 401, 408–09, 188 N.W. 636 (1922), we concluded that the phrase "used exclusively" did not preclude a religious association from occasionally engaging in commercial publishing where that publishing constituted less than one percent of its business. Similarly, in *Cardinal Publishing Co. v. City of Madison*, 205 Wis. 344, 347–48, 237 N.W. 265 (1931) (*Cardinal Publishing I*), we determined that "used exclusively" did not preclude "inconsequential or incidental uses of the property for gain." *See also Columbia Hospital*, 35 Wis. 2d at 671.

¶ 19. If our construction of the phrase "used exclusively" has brooked some exceptions, those exceptions have not swallowed the rule. In *Gymnastic Association of the South Side of Milwaukee v. City of Milwaukee*, 129 Wis. 429, 109 N.W. 109 (1906), we concluded that the Gymnastic Association did not exclusively use their entire property when they leased out portions of the building to the purveyors of a public saloon and barbershop. We noted a legitimate distinction between use that is "incidental to and promotive of the main purpose for which a building is primarily devoted and the permanent leasing of parts of the building for uses having no relation to the owner's prin-

cipal purpose."[6] *Id.* at 437. Similarly, in *Cardinal Publishing Co. v. City of Madison*, 208 Wis. 517, 519, 243 N.W. 325 (1932) (*Cardinal Publishing II*), we stated that commercial publishing income of roughly ten percent of an exempt organization's total income "cannot be claimed as incidental, negligible, or inconsequential" and, as a result, the property was not used exclusively under the statute.

¶ 20. In general, the relevant question is this: How consequential was the questionable activity when compared to the total activity on the property? *See, e.g., Cardinal Publishing I*, 205 Wis. at 347; *Cardinal Publishing II*, 208 Wis. at 519. This fact-specific question can only be answered on a case-by-case basis.

¶ 21. We have, on prior occasions, held that the proper comparison is actual non-exempt use as against actual exempt use. *Alonzo Cudworth Post No. 23 v. City of Milwaukee*, 42 Wis. 2d 1, 13, 165 N.W.2d 397 (1969); *see also Trustees of Clinton Lodge v. Rock County*, 224 Wis. 168, 172, 272 N.W. 5 (1937). Requiring a benevolent association to show how the property is actually used is merely a part of the association's burden to show that it falls "within the terms of the exemption." *Alonzo Cudworth*, 42 Wis. 2d at 13 (quoting *Methodist Episcopal Church Baraca Club v. City of Madison*, 167 Wis. 207, 167 N.W. 258 (1918)). In order to sustain its

---

[6] At the time we decided *Gymnastic Association of the South Side of Milwaukee v. City of Milwaukee*, 129 Wis. 429, 109 N.W. 109 (1906), the statute did not contain a partial exemption provision: the property was either completely exempt or completely taxed. We declined to judicially create such a provision, instead deferring the consideration of that task to the legislature. *Id.* at 438.

burden of proof, Deutsches Land must show its actual exempt use.

¶ 22. Benevolent ownership of property is not enough to satisfy the dictates of Wis. Stat. § 70.11(4); benevolent use of that property is also required. *State ex rel. State Ass'n. of Y.M.C.A. v. Richardson*, 197 Wis. 390, 392, 222 N.W. 222 (1928); *Dominican Nuns v. City of La Crosse*, 142 Wis. 2d 577, 581, 419 N.W.2d 263 (Ct. App. 1987). Just as a benevolent association can own title to property without actually using it for benevolent purposes, a benevolent association can own title to property without actually using it at all. *See, e.g., Green Bay & Mississippi Canal Co. v. Outagamie County*, 76 Wis. 587, 591, 45 N.W. 536 (1890). In either case, the benevolent association is not entitled to an exemption from property taxes. *See, e.g., Men's Halls Stores, Inc. v. Dane County*, 269 Wis. 84, 69 N.W.2d 213 (1955); *Green Bay & Mississippi Canal Co.*, 76 Wis. at 591. It is therefore necessary for a benevolent association to detail its use of the property so that tax assessors know what types of activities, if any, are occurring on the property.

¶ 23. In many situations a benevolent association will demonstrate that its use of the property is so pervasive that the association should be treated as if it is in continual use of the property. That is to say, a school will likely not receive only a 75% exemption because classes are not held in the summer months. While such treatment may not be unusual, it is not as the dissent would have it automatic. Dissent at 114, 119. As with every aspect of property tax exemptions, the burden to demonstrate the use of the property lies with the party seeking the exemption. *See Pulsfus Farms*, 149 Wis. 2d at 811; *Alonzo Cudworth*, 42 Wis.

2d at 13; *Methodist Episcopal Church Baraca Club*, 167 Wis. at 211. The benevolent association that uses its property only occasionally and allows it to lie fallow at all other times will have any exemption reflect its actual usage. Similarly, the benevolent association that uses it property only occasionally and allows others to use it for profit at other times will have any exemption reflect its actual usage.

¶ 24. Deutsches Land maintains, and the dissent agrees, that its use of Old Heidelberg Park is so pervasive that the occasional use of the park for corporate picnics is inconsequential. That may in fact be the case, but it is not so based on this record.[7]

¶ 25. Deutsches Land argues that the 20 days of corporate use ought to be measured against the remaining 345 days of the year. To substantiate its claim that the corporate use of the park consisted of approximately 20 occasions annually, Deutsches Land properly proffered copies of business records reflecting this usage. From these records, Glendale and the cir-

---

[7] Even assuming that Deutsches Land had offered sufficient evidence to show that its usage of the park was so pervasive to warrant a comparison of 20 days of corporate use to 345 days of benevolent use, we maintain doubts with the dissent's contention that this percentage of for-profit activity—roughly 6%—is inconsequential or incidental. Dissent at 113. *Compare Northwestern Publishing House v. City of Milwaukee*, 177 Wis. 401, 408–09, 188 N.W. 636 (1922) (for-profit income .00277% of total income deemed inconsequential); *with Cardinal Publishing Co. v. City of Madison*, 208 Wis. 517, 519, 243 N.W. 325 (1932) (for-profit income 10.7% of total income not inconsequential).

Even if Old Heidelberg Park was ineligible for a total exemption this would not, as we explain later, preclude Deutsches Land from seeking a partial exemption for the park. To do so successfully, of course, it must adequately prove its case.

cuit court obtained concrete information upon which to base this part of the calculation. However, to substantiate its claim that the benevolent societies' use of the park was so pervasive so as to be calculated at 345 days, Deutsches Land offered only the testimony of benevolent association members who made generalized assertions about the associations' use. Although apparently it keeps a calendar and other records of the park's usage, Deutsches Land did not attempt to solidify those generalized assertions by introducing those records or reports generated from those records. As a result, Glendale and the circuit court could do nothing but speculate on the actual benevolent use of the park.

¶ 26. As is more fully detailed in the discussion of the Bavarian Inn below, such unsupported opinion testimony, absent more, insufficiently demonstrates the actual use of the property in order to satisfy Wis. Stat. § 70.11. Deutsches Land offered sufficient evidence of only the actual corporate use of Old Heidelberg Park; it did not do so for the actual benevolent use of the park.

¶ 27. *Alonzo Cudworth* dictates that Deutsches Land is not entitled to an exemption for Old Heidelberg Park or the Fest Hall on this record. 42 Wis. 2d at 13. In allowing such exemption, the dissent overrules *Alonzo Cudworth sub silentio* and replaces it instead with a "benevolent control" test. Dissent at 110–111. It is unclear where the dissent derives its contention that exercising "control" of property entitles a benevolent association to an exemption. Such a new test is not supported by our existing case law.

¶ 28. We have repeatedly stressed that a benevolent association must do more than own or control property to claim an exemption; it must also use that property for benevolent purposes. *See, e.g., Alonzo*

*Cudworth*, 42 Wis. 2d at 12–13; *Men's Halls Stores, Inc.*, 269 Wis. at 89; *Clinton Lodge*, 224 Wis. at 172–73; *Richardson*, 197 Wis. 2d at 392; *Green Bay & Mississippi Canal Co.*, 76 Wis. at 591; *Evangelical Lutheran Synod*, 125 Wis. 2d at 545 n.3; *Dominican Nuns*, 142 Wis. 2d at 581. The dissent's alteration of our long-standing precedent is unwarranted. Deutsches Land, like any other entity seeking an exemption, must show that its actual use of the property was for benevolent purposes. On this record, Deutsches Land did not adequately make this showing and the exemption must be denied.

### Bavarian Inn

¶ 29. Deutsches Land also sought a property tax exemption on its activities at the Bavarian Inn. It recognized that Waldhaus' for-profit activity at the Bavarian Inn meant that the Inn did not qualify for a total exemption. Instead, Deutsches Land sought a partial exemption of 25% of the building based on the activities that the benevolent associations conduct at the Bavarian Inn. Deutsches Land claimed its entitlement to a partial exemption under Wis. Stat. § 70.11(8),[8] which provides in relevant part:

> (8) TAXED IN PART. Property that is exempt under this section and that is used in part in a trade or business for which the owner of the property is

---

[8] In 1997, the legislature repealed and recreated Wis. Stat. § 70.11(8) as § 70.1105. 1997 Wis. Act 35 § 243. That legislative action only altered the placement of the statutory provision and did not alter its substance in any way. Since this case involves the years 1993–95, we will refer to the placement of the provision as § 70.11(8) rather than as its current statutory designation.

subject to taxation under sections 511 to 515 of the internal revenue code, as defined in s. 71.22(4m), shall be assessed for taxation at that portion of the fair market value of the property that is attributable to the part of the property that is used in the unrelated trade or business. This subsection does not apply to property that is leased by an exempt organization to another person. . . .[9]

¶ 30. Since 1931, this state has recognized the ability of an exempt organization to receive a property tax exemption on only part of its property. *See* § 2, ch. 302, Laws of 1931. Under the statutory scheme in place from 1931 until 1991, determining the taxable part of an exempt organization's property was accomplished by calculating how much of the property was used for "pecuniary profit." *See* Wis. Stat. § 70.11(8) (1989–90); *Trustees of Clinton Lodge*, 224 Wis. at 171–173.

¶ 31. However, in 1991, the legislature repealed the "taxed in part" subsection and recreated it with the language that appears above. 1991 Wis. Act 39, § 1706t. Two important changes were instituted by the 1991 recreation. First, the legislature replaced the "pecuniary profit" test with the "unrelated business taxable income" test borrowed from the Internal Reve-

---

[9] We note that Wis. Stat. § 70.11(8) begins with "Property that is exempt under this section. . . ." Read literally, this phrase may require property to be totally exempt under the statute in order for subsection (8) to apply. This would mean that the property needs to be "used exclusively" by the exempt organization for exempt purposes. However, such an interpretation would render subsection (8) meaningless. The reason an exempt organization seeks a partial exemption is precisely because it does not exclusively use its property for exempt purposes. Our interpretation of subsection (8) must give effect to the subsection's overall purpose of allowing an exempt organization to claim partial exemptions.

nue Code. As noted in a report from the legislative history, this change was driven by a legislative desire to remove advantages that exempt organizations were perceived to have under the pecuniary profit test:

> [t]he primary objective of adopting the unrelated business income tax law was to eliminate a source of unfair competition by placing the unrelated business activities of certain exempt organizations upon the same tax basis as the nonexempt business endeavors with which they compete.

Report: *Shared Revenue, Property Taxes and Tax Relief*, p. 5. (drafting file, 1991 Wis. Act 39, § 1706t).

¶ 32. Second, the legislature made Wis. Stat. § 70.11(8) inapplicable where an exempt organization leases its property. The inescapable conclusion drawn from the language of subsection (8) is that an exempt organization that leases a portion of its property cannot claim a partial exemption under subsection (8).

¶ 33. These two changes are embodied in the post–1991 versions of the *Property Assessment Manual for Wisconsin Assessors (Assessment Manual)* published by the Department of Revenue.[10] The *Assessment Manual* describes what constitutes unrelated business taxable income and offers examples of activities that are considered for-profit and taxable. *See Assessment Manual*, 22–6, 22–7 (revised 12–95). Notably, the examples offered in the *Assessment Man-*

---

[10] Because the legislature charged the Department of Revenue, in light of its special expertise in this area, with interpreting and applying the recreated Wis. Stat. § 70.11(8), we accord weight to the agency's interpretation in the *Assessment Manual. See Hagen v. LIRC*, 210 Wis. 2d 12, 18–20, 563 N.W.2d 454 (1997); 1991 Wis. Act 39, § 1897t, *codified at* Wis. Stat. § 73.03(2a).

*ual* demonstrate that Wis. Stat. § 70.11(8) does not apply to situations where an exempt organization leases a part of its property to another entity that engages in for-profit activity.[11] Rather, subsection (8) applies to those situations where the exempt organization itself engages in the for-profit activity.

¶ 34. In such situations, the Department of Revenue, pursuant to its charge of interpreting and applying Wis. Stat. § 70.11(8), has set forth three methods of calculating a partial exemption under subsection (8). Where only a defined and segregated part of the property is used in for-profit activities, the partial exemption can be calculated by subtracting the square footage of that part of the property used in the for-profit activity from the square footage of the entire property. *Assessment Manual*, 22–6, 22–7. Conversely, where the entire property is used part of the time in for-profit activities, the partial exemption can be calculated in one of two ways. The partial exemption can either be determined by comparing the percentage of income

---

[11] A couple of the manual's examples adequately demonstrate the point:

> Examples of *activities* that *are* considered unrelated trade or business are:
>
> • a lodge operates a restaurant which is regularly open to the public.
>
> • a university owned printer which primarily prints material for the university also regularly does printing for the public.

*Assessment Manual*, 22–6 (Revised 12/95). Neither any example nor any statement of general principles set forth in the manual even hints that the subsection would apply to a situation where an exempt organization leases a part of its facility to another person who engages in for-profit activity. Instead, if the lodge itself operates a restaurant or an exempt printer itself does commercial printing, subsection (8) can apply.

attributable to the for-profit activity versus the total income of the exempt organization, or by comparing the percentage of time attributable to the for-profit activity versus the total time the property is used. *Id.*

¶ 35. An exempt organization's ability to get a partial exemption under the recreated Wis. Stat. § 70.11(8) is substantially limited by that subsection's "no lease" sentence. However, both the testimony of the City of Milwaukee's chief assessor, Peter Weissenfluh,[12] and the joint *amicus* brief of the City of Milwaukee, the League of Wisconsin Municipalities, and the Wisconsin Association of Assessing Officers ("the joint *amici*"), indicate that assessors who process partial exemption applications look beyond subsection (8) in their analysis. According to Weissenfluh and the joint *amici*, it is the well-established practice and the standard methodology of assessors in this state to look additionally to the introductory phrase of § 70.11, which is also referred to by the parties as the "preamble." The relevant language is as follows:

**70.11 Property exempted from taxation.** The property described in this section is exempted from general property taxes. *Leasing a part of the property described in this section does not render it taxable if the lessor uses all of the leasehold income for maintenance of the leased property, construction debt retirement of the leased property or both and if the lessee would be exempt from taxation under this chapter if it owned the property.* Any lessor who claims that leased property is exempt from taxation

---

[12] Weissenfluh's particular expertise was noted by both Deutsches Land and the City of Glendale. Not only has Weissenfluh been an assessor for 25 years, he also has been the chief assessor in the state's largest city which annually receives 500 applications and administers 7,000 exemptions.

under this chapter shall, upon request by the tax assessor, provide records relating to the lessor's use of the income from the leased property. (Emphasis added.)

¶ 36. Construing what we refer to as the "preamble partial exemption provision" is a matter of first impression for this court. The preamble does not explicitly allow an exempt organization to lease a part of its property to a for-profit organization and still maintain the exemption on the non-leased part. However, that consequence reasonably follows from the expressed language.

¶ 37. The preamble language states that an exempt organization may lease a part of its property and still be exempt from property taxes on that leased part so long as certain conditions are met. Those conditions are (1) the exempt organization must use the leasehold income for maintenance of the property, construction debt retirement, or both (the "rent use condition") and (2) the lessee would itself be entitled to an exemption if it owned the property (the "lessee identity condition"). If the exempt organization uses the rental income in ways other than provided for by the statute, no exemption can be claimed on the leased part of the property. Likewise, if the lessee itself is not an exempt organization but rather a for-profit organization, no exemption can be claimed on the leased part of the property.

¶ 38. Under the preamble to Wis. Stat. § 70.11, an exempt organization that leases a part of its property retains a total exemption so long as it meets both the rent use condition and the lessee identity condi-

tion.[13] Consequently, if a lease by an exempt organization fails either of these two conditions, the exempt organization loses its total exemption but retains a partial exemption on the property that is not leased.

¶ 39. In reality, the only material distinction between the Wis. Stat. § 70.11(8) partial exemption provision and the preamble partial exemption provision is whether a lease is in existence. If a lease is not present, the exempt organization should seek a partial exemption under subsection (8). Conversely, if a lease is present, the exempt organization should seek a partial exemption under the preamble. In other respects—such as sufficiency of proof—partial exemptions are treated the same whether they are derived from the preamble or § 70.11(8).

¶ 40. According to the brief of the joint *amici* and the testimony of Weissenfluh, the methodologies set forth in the *Assessment Manual* for calculating a partial exemption under Wis. Stat. § 70.11(8) are the same methodologies used by assessors for calculating a partial exemption under the preamble. Therefore, under either the preamble or subsection (8), the amount of the

[13] Wisconsin Stat. § 70.11(4) adds a third "racial non-discrimination" condition to the two contained in the preamble: "in addition to the requirements specified in the introductory phrase of this section, the lessee does not discriminate on the basis of race."

Thus, an organization that claims its exemption under subsection (4) and leases a part of its property must satisfy three conditions to maintain its total exemption: (1) the rent use condition; (2) the tenant identity condition; and (3) the "racial non-discrimination" condition. Should the exempt organization's lease fail any of these three conditions, the leased part of the property loses its exemption.

partial exemption can be determined by calculating the percentage of space or time used in for-profit activities or the percentage of income that is attributable to the for-profit activity. *See Assessment Manual,* 22–6, 22–7.

¶ 41.　The dissent fails to discern that in practical terms, the existence of a lease makes little difference in the ultimate determination of whether an organization is entitled to a partial exemption. It contends that if a lease were present, Deutsches Land would be ineligible for an exemption under either Wis. Stat. § 70.11(8) or the § 70.11 preamble. Dissent at 118 n.7. This misses the full purpose of the preamble. If the dissent were correct, a benevolent association could only lease "a discrete part"—apparently meaning a discrete *geographical* part of its property—without completely destroying its exemption. *Id.* According to the dissent, the benevolent association that leases the entire geography of its property only part of the time (and uses the entire geography of its property the balance of the time) does not lease its property "in part" and therefore cannot hope to claim any exemption.

¶ 42.　Curiously, the dissent fails to articulate why the word "part" in the preamble only references a geographic subdivision of the benevolent association's property. "Part" is not so limited by its context in the preamble. Moreover, the word "part" in Wis. Stat. § 70.11(8) encompasses a broader meaning than the dissent is willing to attribute to it as seen in the word's interpretation in the *Assessment Manual,* 22–7. Why should the legislature's use of "part" in the preamble be treated differently than its use of "part" in § 70.11(8)? The dissent fails to offer an answer.

¶ 43.　Additionally the dissent's interpretation, aside from its failure to consider the language of the preamble and its relationship with Wis. Stat.

§ 70.11(8), would have serious practical repercussions for many exempt organizations in this state. For example, under the dissent's interpretive scheme, one of the three benevolent organizations Peter Weissenfluh identified at trial as offering sufficient documentation for its exemption application would in future years nonetheless be categorically ineligible for any exemption whatsoever because it leased its entire property to a for-profit entity at limited times while using the property for its activities at all other times. The dissent leaves a whole category of benevolent organizations ineligible to obtain any sort of exemption—full or partial—in the future. That approach represents a significant and unwarranted departure from both the statutory provisions as well as the current practices.

¶ 44. Regardless of which of the two partial exemption provisions is applicable in a particular case, the organization seeking the exemption retains the burden to show that it has satisfied the evidentiary requirements of the statute. On this record, Deutsches Land did not sufficiently prove its entitlement to a partial exemption under either of the two partial exemption provisions. It sought and received from the circuit court a 25% exemption on the Bavarian Inn building based primarily on two facts: the square footage of the main and lower floors of the Bavarian Inn and the testimony by the general manager of the Bavarian Inn detailing the percentage of usage by the benevolent associations. These evidentiary offerings are not sufficient to entitle Deutsches Land to a partial exemption.

¶ 45. First, since the record reflects that both the main and lower floors were used by both the benevolent associations and Waldhaus, both floors were used for

exempt and for for-profit activity.[14] Therefore, under these facts, comparing the square footage of the main floor with the square footage of the lower floor does not provide support for its claim of exemption.

¶ 46. Second, Deutsches Land's evidence of the Bavarian Inn's percentage of for-profit use did not adequately demonstrate how the Inn was actually used. Deutsches Land's evidence primarily consisted of the testimony of the general manager of the Bavarian Inn. She testified that every facility in the Inn was used at least part of the time by the public. In opining that the benevolent associations used approximately 40% of the Bavarian Inn and the public used approximately 60%, she relied on her general observations and recollections. Reviewing an excerpt of her testimony demonstrates its deficiencies:

> Q. Do you keep any records of how many events these clubs as clubs have in the—the main banquet room. . .?
>
> A. Yes, I do.
>
> Q. How does that break down as between the use by the public?
>
> A. For the ballroom only?
>
> Q. For the ballroom only.
>
> A. I really don't have that, you know, the knowledge right now. I'd have to look at my records.

---

[14] The record does indicate that a storage area of some sort exists on the lower floor that is used only by the benevolent associations. However, nothing in the record indicates the size of this room. Deutsches Land, if it desired to claim an exemption based on the size of this space, needed to provide the proper evidence to support its exemption claim. Again, it has not done so.

¶ 47. The general manager's opinion of 40% exempt use and 60% for-profit use was not documented by supporting evidence. Rather, as the general manager herself stated, it was based entirely on her "observations" from a year of employment as the Bavarian Inn's general manager. While the general manager hinted that her observations were informed by business records, Deutsches Land did not offer into evidence any records or any reports created from those records. Unfortunately, as this record exists, we are left with no way to know how accurately the general manager's memory corresponds with the actual usage.

¶ 48. The insufficiency of Deutsches Land's evidence is amplified when it is compared to the evidence other exempt organizations have proffered to support their applications for partial exemptions. At trial, Chief Assessor Weissenfluh testified about the documentation certain exempt organizations in Milwaukee have offered to support their applications. A few of the responses are enlightening:

> Q. [I]f there were to be 20,000 square feet of usable space in the building, did the [exempt organization] come and say, of that 20,000 square feet available for use in the building, 15,000 square feet or some such number is what is exclusively used for our purposes and 5,000 square feet is devoted to another purpose or something like that?
>
> A. They had it broken down in more detail than that.
>
> Q. In other words, room by room detail?
>
> A. Maybe not room by room, but banquet hall, museum, gift shop, separate areas of the building specifically with those sizes and with the percentage of time it was used for.

Q. Well now, let me get to the percentage of time. What kind of information did they give you as to percent that supported percentages of time?

A. They actually spelled out the percentages of time that was used for—for for-profit activities and then the corollary would be the not-for-profit, their own use.

. . .

Q. And. . .how were you able to determine the question of area of use and degree of use?

A. Again, the—I requested full documentation by the [exempt organization] relative to the amount of space used by the [exempt organization]. And what they gave me was a breakdown of how often the—the—the facility was used, by whom, specifically the [exempt organization], and other not-for-profit organizations. . . .

Q. As I understand it, the applicant for exemption for [the exempt organization's property] provided a calendar which accounted for every minute of every day by every entity; is that correct?

A. That's right, it was a very detailed document.

■■■

¶ 49. In comparison, we conclude that the general manager's "recollections" and "observations" fail to satisfy Deutsches Land's burden of proof. An exempt organization must base its claim for an exemption on more than merely unsupported opinion testimony. The circuit court erroneously exercised its discretion in awarding a partial exemption on these facts. *Brabec v. Brabec*, 181 Wis. 2d 270, 283, 510 N.W.2d 762 (Ct. App. 1993); *see also Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

### Soccer Fields

¶ 50. Deutsches Land sought a full exemption on the soccer fields. It asserts that because those fields are used exclusively by the benevolent soccer organization, they are entitled to a total exemption under Wis. Stat. § 70.11(4).

¶ 51. While the soccer fields may be used exclusively by the soccer club, that fact alone does not automatically dictate an exemption. Wisconsin Stat. § 70.11(4) requires that even if a benevolent association exclusively uses its property for benevolent purposes, the benevolent association is only entitled to an exemption on property "not exceeding 10 acres. . .necessary for location and convenience of buildings while such property is not used for profit."

¶ 52. The exemption of land is tied to, and follows from, the exemption of buildings. This means that land devoid of buildings cannot qualify for an exemption under Wis. Stat. § 70.11(4). *See Richardson,* 197 Wis. at 392; *Green Bay & Mississippi Canal Co.,* 76 Wis. at 591. Similarly, if no part of a building qualifies for an exemption, then no part of the land "necessary for [the] location and convenience" of that building will qualify for an exemption.

¶ 53. Based on this record, Deutsches Land is not entitled to an exemption on the soccer fields. No building exists on the soccer fields that could reasonably be considered to require such an expanse of land for its necessity and convenience. The dissent contends that a 1,500 square foot locker room/rest room facility that apparently is located near one of the soccer fields satisfies the statute. Dissent at 107–108. It is odd that the dissent is willing to hang its hat on this relatively minor building when the existence of the facility was

only tangentially mentioned at trial. Indeed, in its brief to this court Deutsches Land does not even mention this building, let alone contend that it satisfies the dictates of Wis. Stat. § 70.11(4).

¶ 54. It is hard to imagine that expansive soccer fields are "necessary for location and convenience" of a locker room/rest room facility. One would reasonably assume that such a facility was constructed for the convenience of the soccer fields and not the other way around. However, the statute does not allow exemptions for "buildings necessary for the location and convenience of lands."

■

¶ 55. As a result, to satisfy the building requirement, the soccer fields would need to be necessary for the location and convenience of some building located elsewhere on the 14-acre parcel that qualifies for an exemption. However, as discussed above, under this record Deutsches Land is not entitled to any exemption on either Old Heidelberg Park or the Bavarian Inn. Since there are no buildings eligible for an exemption on this record, it necessarily follows that the soccer fields are not entitled to an exemption.[15]

---

[15] Because we dispose of Deutsches Land's claim on these grounds, we do not need to resolve other issues raised by the parties. *In Interest of Courtney E.*, 184 Wis. 2d 592, 603, 516 N.W.2d 422 (1994). Namely, we do not decide whether the playing and teaching of soccer are indeed benevolent or educational activities contemplated by Wis. Stat. § 70.11(4). *See Kickers of Wisconsin, Inc. v. City of Milwaukee*, 197 Wis. 2d 675, 541 N.W.2d 193 (Ct. App. 1995). Also, we do not decide whether the acreage of the soccer fields was land "necessary for location and convenience" of the Bavarian Inn building or Fest Hall. *See Friendship Village Milwaukee v. City of Milwaukee*, 194 Wis. 2d 787, 795, 535 N.W.2d 111 (Ct. App. 1995).

Conclusion

¶ 56. In summary, we conclude that Deutsches Land has not sufficiently shown that it is entitled to an exemption from real property taxes for the years of 1993–95. Deutsches Land is a benevolent association under Wis. Stat. § 70.11(4). This was never in dispute. However, Deutsches Land did not produce sufficient evidence showing that the corporate use of Old Heidelberg Park was incidental in comparison to the benevolent use of the park. Similarly, Deutsches Land did not sustain its burden of proving entitlement to a real property tax exemption for the Bavarian Inn. It failed to produce sufficient evidence to measure a comparison between for-profit and exempt use of space, time, or income. Because of its evidentiary failure to support an exemption for any building, Deutsches Land is not entitled to an exemption on the soccer fields. It failed to show that the soccer fields are "necessary for [the] location and convenience" of any building that is exempt under § 70.11. Accordingly, although we disagree with some of its rationale, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 57. DAVID T. PROSSER, J. (*concurring in part, dissenting in part*). I concur in the majority's conclusion that Deutsches Land is not entitled to a 25 percent property tax exemption on the Bavarian Inn; but I dissent from its denial of exemptions for Lots 1, 3, and 4. Because this case is highly fact-intensive, some of the facts will be restated.

¶ 58. Deutsches Land, Inc. is a benevolent association which holds 14 acres of property in the City of

Glendale for five other benevolent associations. Under Wisconsin law, benevolent associations may seek exemption from property tax for up to 10 acres of their property, but they must satisfy the conditions set out in the statute.

¶ 59. On December 30, 1994, Deutsches Land brought an action in the circuit court of Milwaukee County seeking a declaratory judgment that it was entitled to a total tax exemption on Lots 1, 3, and 4 of its Glendale property and a partial tax exemption on the improvements to Lot 2 of its Glendale property. The action was commenced after Deutsches Land had filed an unsuccessful claim with the city and had attempted to secure a full or partial exemption through negotiation.

¶ 60. After a bench trial, Circuit Judge William J. Haese determined that "Lots 1, 3, and 4 of the property of Deutsches Land, Inc. located at 700 W. Lexington Boulevard. . .are exempt form [sic] real property taxation under sec. 70.11(4), Stats., for the years 1993, 1994 and 1995." The court also ruled that 25 percent of the Bavarian Inn on Lot 2 was exempt from property taxation. These determinations were all reversed by the court of appeals, and it is that decision which is under review by this court.

## I.

¶ 61. Lots 1 and 4 of Deutsches Land's Glendale property are soccer fields. Together, they total about 5.6 acres. Lot 4, on the north end of the property, contains a full-sized soccer field and a 1,500 square foot locker room with showers and washroom facilities. Lot 1, on the south end of the property, is a soccer practice area. Lots 1 and 4 are used by the Bavarian Soccer

Club, one of the five benevolent associations which own Deutsches Land. The circuit court found that:

> The Bavarian Soccer Club was founded in 1929 and conducts a year-round program for its 600 members. It has progressed from soccer played primarily by its own adult members to a recreational activity of choice for male German immigrants to include an elaborate youth program recently developed for the children of members and as an outreach to other children in the community. Today 13 youth teams with approximately 15 members per team participate in soccer on the fields located on Lexington Avenue. There are six adult teams, a women's team, a major competitive team, an over–30 team, and interestingly, an under–100 team. The club's announced purpose and activities serve to perpetuate an interest in the game of soccer as part of the Bavarian tradition and to train Germanic youth in the game of soccer and provide them with a wholesome recreational outlook. The languages of the club are both English and German. It makes daily use of the outdoor soccer facilities on Lots 1 and 4 during the season from early spring to mid fall. Practices and tournaments continue throughout the year and require practice sessions. Winter practice takes place in Fest Garden [Fest Hall], located in Old Heidelberg Park. Petitioner's Appendix at 112–13.

## A.

¶ 62. The city contends that Deutsches Land may not claim exemption for Lots 1 and 4 because the playing and teaching of soccer are not exempt activities under Wis. Stat. § 70.11(4). For this proposition, the city relies on *Kickers of Wisconsin, Inc. v. City of Milwaukee*, 197 Wis. 2d 675, 541 N.W.2d 193 (Ct. App.

1995). The majority assumes, without deciding, that the playing and teaching of soccer are covered by § 70.11(4). I would determine that the activities here are covered by the statute and that *Kickers* is distinguishable.

¶ 63. In *Kickers*, the organization seeking a tax exemption did not own the land for which it sought exemption. Rather, it leased the land from the Robert A. Uihlein, Jr. 1976 Trust. City of Milwaukee Chief Assessor Peter C. Weissenfluh advised Kickers of Wisconsin, after reviewing the materials submitted by the organization "and the relevant assessment case law," that he had "no doubts that if Kickers owned the property it would qualify for the ten acre exemption. I still have doubts about the ownership issue, and have denied the exemption on that basis." Letter of July 20, 1993, from Peter C. Weissenfluh to Timothy C. Frautschi. Exhibit C, Appellant's Appendix in *Kickers of Wisconsin, supra.*

¶ 64. When Kickers went to court, the City of Milwaukee took the position that a soccer club did not qualify for the exemption; and the circuit court agreed, holding that Kickers did not qualify as an "educational association" entitled to the property tax exemption under § 70.11(4). This decision was affirmed by the court of appeals in a 2 to 1 decision. The majority declared that the case "presents a relatively 'close call' in determining whether Kickers is 'substantially and primarily devoted to educational purposes.' " *Kickers,* 197 Wis. 2d at 685. But the court said the organization failed to meet the two-step test for "educational associations" set out in *Janesville Community Day Care Ctr., Inc. v. Spoden,* 126 Wis. 2d 231, 376 N.W.2d

105

78 (Ct. App. 1985).[1] The court also noted that while Kickers of Wisconsin claimed it qualified as a benevolent association, "Kickers fails to specifically support its argument with reference to a benevolent association." *Kickers*, 197 Wis. 2d. at 681 n.2.

¶ 65. There are clear differences between this case and *Kickers*.[2] The Bavarian Soccer Club is one of the owners of Deutsches Land which owns the lots; and both Deutsches Land and the Bavarian Soccer Club are indisputably benevolent associations. These benevolent associations are using Lots 1 and 4 for exactly the purpose expected and intended by their benevolent status. Consequently, the *Kickers* case does not control here, and this court would be hard pressed to deny a tax exemption on Lots 1 and 4 to Deutsches Land on grounds that the organization does not satisfy the cri-

---

[1] In his dissent, Judge Ralph Adam Fine wrote:

In my view, the uncontroverted evidentiary submissions establish without a doubt that the Kickers of Wisconsin, Inc., is an "educational association" as that term is used in § 70.11(4), STATS. . . . It is settled that "educational" is not limited to " 'formal academic curricula.' ". . . The Kickers have an admirable record of teaching our state's youngsters not only the principles of soccer, but, more significantly, the principles of sportsmanship, teamwork, and life. In my view, this is not a "relatively 'close call,' " as the Majority believes.

*Kickers of Wisconsin, Inc. v. City of Milwaukee*, 197 Wis. 2d 675, 687, 541 N.W.2d 193 (Ct. App. 1995).

[2] Peter C. Weissenfluh testified as a witness for Deutsches Land in this case. He explained some of the differences between Deutsches Land and Kickers of Wisconsin as organizations and stated that Kickers had not directly applied to Milwaukee for a tax exemption but rather had raised the issue on appeal.

teria for a benevolent association engaging in appropriate activity.[3]

## B.

¶ 66. Even though it is a benevolent association, Deutsches Land must satisfy another condition in the statutes, *i.e.*, that its "land" (Lots 1 and 4) is "necessary for location and convenience of buildings while such property is not used for profit." Wis. Stat. § 70.11(4).

¶ 67. In its argument, Deutsches Land attempted to establish that the Bavarian Inn was a partially exempt building and that the soccer fields were necessary for location and convenience of this building where the soccer club frequently congregates. This argument fails because the Bavarian Inn did not qualify as exempt.

¶ 68. There are, however, two other buildings that may serve as the foundation for the exemption of Lots 1 and 4. First, there is the 1,500 square foot "rest-room-locker room" with shower facilities for soccer players located on Lot 4. This building is listed in the Tax Exemption Reports filed by Deutsches Land with the city in 1993, 1994, and 1995, and it was described in testimony at trial. Second, there is Fest Hall, the 12,000 square foot building used for indoor soccer during the winter months. This building is located on Lot 3, which is substantially contiguous to Lots 1 and 4.

¶ 69. For the Bavarian Soccer Club, soccer is a year-round activity. It is played outdoors "daily. . .from

---

[3] Peter C. Weissenfluh testified that Milwaukee recognizes boccie ball as an authorized exempt activity at the Italian Community Center and gymnastics as an authorized exempt activity at Turner Hall. *Cf. Gymnastic Association of the South Side of Milwaukee v. City of Milwaukee*, 129 Wis. 429, 109 N.W. 109 (1906).

early spring to mid fall." It is played indoors during the winter.

¶ 70. A benevolent association which seeks to promote soccer as a year-round activity would likely locate a building for indoor practice near land available for outdoor practice and competition. In addition, a building that is used for indoor soccer practice in winter is theoretically available for indoor soccer practice in summer during inclement weather. Fest Hall on Lot 3 and any building on Lot 3 which provides storage for outdoor soccer equipment are convenient to Lots 1 and 4; and, conversely, Lots 1 and 4 are convenient to Fest Hall and to any storage buildings. Lots 1 and 4 are clearly convenient to the relatively new building with washroom, locker room, and shower facilities on Lot 4, which would have been purposely located near the outdoor soccer areas. The relationship between the land and these buildings is symbiotic. Hence, Lots 1 and 4 are wholly or partially exempt from property taxation if any of the buildings to which they are convenient are wholly or partially exempt.

## II.

### A.

¶ 71. The new "restroom-locker room" with showers for soccer players is designed to advance the exempt purpose of the benevolent association; and it is not used for any inconsistent purpose. The building is not used for profit by either members or non-members. It is not leased. The record reveals no reason why this soccer-related building should not be exempt from taxation and thereby qualify Lots 1 and 4 for exemption.

## B.

¶ 72. The exact status of Fest Hall is a more difficult question. Fest Hall, where indoor soccer is played, is part of Lot 3, Old Heidelberg Park. Lot 3 has 4.4 acres and includes a number of small buildings in addition to Fest Hall. The five benevolent associations use Lot 3 in their activities, and Lot 3 is the site of two major festivals that raise funds for these organizations.

¶ 73. The status of Lot 3 is in dispute because Deutsches Land permits Bavarian Waldhaus Inn, Inc., the profit-making entity which operates the Bavarian Inn on Lot 2 for the benevolent associations, to use Old Heidelberg Park, including Fest Hall, on approximately 20 occasions annually for such Bavarian Inn customers as the Milwaukee Medical Clinic, Mortgage Guaranty Insurance Corporation, W. H. Brady Co., Master Lock, and Johnson Controls.

¶ 74. The requirements for total exemption are set out in § 70.11(4):

> . . .Property exempted from general property taxes is:
>
> (4) . . .Property owned and used *exclusively* by. . .benevolent associations. . .but not exceeding 10 acres of land necessary for location and convenience of buildings while such property is not used for profit. . . .Property that is exempt from taxation under this subsection and is leased remains exempt from taxation only if, in addition to the requirements specified in the introductory phrase of this section, the lessee does not discriminate on the basis of race. (Emphasis added.)[4]

---

[4] The requirements in the "introductory phrase of this section" include the following: "Leasing a part of the property described in this section does not render it taxable if the lessor

¶ 75. To qualify Fest Hall and Lot 3 for total exemption under this subsection, Deutsches Land was required to satisfy several statutory criteria. The key criteria were summarized by the city in its brief, drawing on language from *Milwaukee Protestant Home v. City of Milwaukee*, 41 Wis. 2d 284, 293, 164 N.W.2d 289 (1969), to wit: ". . . a property owner claiming exemption has the burden to demonstrate (1) that it is a benevolent association; (2) that the property is used exclusively for the association's benevolent purpose; and (3) that the property is not used for profit." Defendant-Appellant's brief at 11. We are concerned here with the second and third points.

## "USED EXCLUSIVELY"

¶ 76. The court of appeals declared that § 70.11(4) requires "that the property be 'used exclusively by' those benevolent associations and not for profit. . . .This condition is not ambiguous: the term 'exclusively' brooks no exceptions." *Deutsches Land, Inc. v. City of Glendale*, 215 Wis. 2d 552, 557, 573 N.W.2d 535 (Ct. App. 1997).

¶ 77. The majority properly disagrees with this characterization of the law. Majority op. at 83. Instead, it declares that the relevant question is, "How consequential was the questionable activity when compared to the total activity on the property?" Majority op. at 84.

¶ 78. In answering this question, the facts are completely clear. In 1993, Old Heidelberg Park was used by customers of the Bavarian Inn 17 times; in

uses all of the leasehold income for maintenance of the leased property, construction debt retirement of the leased property or both and if the lessee would be exempt from taxation under this chapter if it owned the property."

1994, 21 times; in 1995, 20 times. The customers included not only several major corporations but also a labor union, a high school class reunion, and two weddings. The benevolent associations controlled Lot 3 at all other times. In 1993, the benevolent associations exercised control over their property 348 days; in 1994, 344 days; in 1995, 345 days, and during these days, the property was available exclusively for their use. It may have been available for their non-exclusive use on some of the other days. During winter months, Fest Hall was used daily or almost daily for indoor soccer practice. During summer months, the entire lot was used for a variety of benevolent association activities including festivals, picnics, fish fries, and ceremonies, and Fest Hall could have been used for occasional soccer practice. There was no use of Old Heidelberg Park by non-members in the months of January, February, March, April, May, October, November, and December in 1993, 1994, or 1995.

¶ 79. Several cases help define the element of exclusive use.[5] In *Cardinal Publishing Co. v. City of Madison*, 205 Wis. 344, 347–48, 237 N.W. 265 (1931) ("*Cardinal Publishing I*"), this court said:

> If there is no segregation of property and devotion of a portion of it to purposes outside of the corporate objects, but if the whole property in a physical sense is primarily devoted to the purposes of the organization, then the fact that there are occasional or

---

[5] *See also Catholic Woman's Club v. Green Bay*, 180 Wis. 102, 192 N.W. 479 (1923). The club was not operated for profit, but the club was used by non-members and its auditorium was frequently rented to other organizations and for "private dancing parties." The non-member activities did not nullify its exemption.

incidental uses of the property for gain, which is devoted to the purposes of the society claiming the exemption, will not destroy the exemption.

In another case, *Northwestern Publishing House v. Milwaukee*, 177 Wis. 401, 409, 188 N.W. 636 (1922), the court said:

> . . . the departure in this case is so slight as to be negligible and therefore to be disregarded. . .[It] does not amount to a sufficient departure to warrant us in saying that the property is not used exclusively for educational and benevolent purposes, particularly where such work is done as incidental to its main purpose.

Applying these cases to the facts above, I find that non-member uses of Lot 3 were inconsequential or de minimis.

## USE FOR PROFIT

¶ 80. Use for profit is a separate element. The circuit court found that Deutsches Land did not profit from the occasional uses of its property by non-members. It found that Waldhaus Inn used Old Heidelberg Park "without charge." It stated:

> Waldhaus Inn, Inc., in the years in question, held approximately 20 non-member events in Old Heidelberg Park without charge. Waldhaus Inn realized income which was duly reported by Waldhaus Inn, Inc. on its tax returns. *None of the income from non-member events was distributed to Deutsches Land,* United German Societies or any of the five societies. (Emphasis added.)

Petitioner's Appendix at 114. The dates in June, July, August, and September each year when Lot 3 was used

by non-members produced no revenue for Deutsches Land. They produced zero percent of Deutsches Land's budget.

¶ 81. The circuit court explicitly found that Deutsches Land's sources of income were rent obtained from Waldhaus Inn, Inc. and income from Volksfest and Oktoberfest in Old Heidelberg Park. Moreover, all this income was used for the purpose of maintaining buildings and grounds of the complex and the payment of taxes and insurance. *Id.*

¶ 82. During the three years at issue, there was no lease from Deutsches Land which authorized the Bavarian Inn to use Old Heidelberg Park on 20 days per year. Deutsches Land simply had an understanding with Bavarian Waldhaus which permitted the Park to be used from time to time by Deutsches Land's affiliated organization. These occasional uses of Old Heidelberg Park by non-member customers of the Bavarian Inn did not increase the rent paid to Deutsches Land, a fact which relates to the profit element.

¶ 83. To sum up, on an average of 20 out of 365 days per year, Old Heidelberg Park was used by an affiliated organization which did not charge its customers extra money for use of the Park and did not pay Deutsches Land extra money for use of the Park. Deutsches Land did not lease a portion of Old Heidelberg Park to some other entity. The occasional uses of its property by non-members did not constitute a consequential percentage of Deutsches Land's income because Deutsches Land was not compensated for these uses.

¶ 84. I believe these facts show that Deutsches Land was entitled to a total exemption for Lot 3 as a matter of law. The uses of Lot 3 by non-members were "comparatively inconsequential." *Alonzo Cudworth*

113

*Post No. 23 v. Milwaukee*, 42 Wis. 2d 1, 12, 165 N.W.2d 397 (1969). These inconsequential uses did not result in any explicit gain and did not destroy the exemption.

¶ 85. In any event, the established facts provide a sufficient basis for this court to determine whether Deutsches Land was *eligible* for a total exemption on Lot 3 because any "questionable" non-member activities were inconsequential, or, conversely, whether it was *ineligible* for a total exemption because those activities must be regarded as "consequential." No additional proof was necessary.

¶ 86. The majority takes a different tack, as though Deutsches Land were a direct beneficiary of every use of Old Heidelberg Park by customers of the Bavarian Inn. It asserts that Deutsches Land did not offer sufficient evidence to answer the question of how consequential the 20 uses were. The majority writes, "Deutsches Land offered sufficient evidence of only the actual corporate use of Old Heidelberg Park; it did not do so for the actual benevolent use of the park." Majority op. at 87.

¶ 87. The majority takes the position that, in analyzing a claim for total exemption, once a benevolent association permits any use of its property by others, it is required to prove not only the extent of the property's use by others but also the extent of the property's use by itself. This means actual use. The association's ownership of the property and the availability of the property for association use count for nothing, while any non-use of the property, any inactivity, counts against the association. I cannot agree that this is a correct statement of the law.

¶ 88. To be sure, the property claiming exemption must be used for a benevolent purpose. The property may not be undeveloped land, which is "quite

a long distance" from buildings and "had never been used at all." *Green Bay & Mississippi Canal Co. v. Outagamie County*, 76 Wis. 587, 590, 45 N.W. 536 (1890). The premises may not be "wholly vacant and unoccupied." *State ex rel. State Assoc. of Y.M.C.A. v. Richardson*, 197 Wis. 390, 392, 222 N.W. 222 (1928). An exemption cannot even be claimed for fully developed property with multiple buildings which has been "vacated" and whose former occupants have "permanently relocated elsewhere." *Dominican Nuns v. City of LaCrosse*, 142 Wis. 2d 577, 581, 419 N.W.2d 270 (1987). Exempt property must be used.

¶ 89. But these cases do not support the proposition that the owner of developed property which is steadily and frequently used for exempt purposes must document the amount of time devoted to exempt use as well as the amount of time consumed in non-exempt use, and then have added to the non-exempt use the total time in which the property is not used in order to arrive at a reduced percentage of exemption.

¶ 90. In assessing whether "questionable activity" is consequential or inconsequential, assessors and courts have often looked to the revenues derived from the "questionable activity" in relation to total revenues. *See Cardinal Publishing Company v. City of Madison*, 208 Wis. 517, 243 N.W. 325 (1932) ("*Cardinal Publishing II*"); *Northwestern Publishing House*, 177 Wis. 2d 401. Assessors and courts may also look to the percentage of space in a property that has been leased or committed to non-exempt use. *Gymnastic Association of the South Side of Milwaukee v. City of Milwaukee*, 129 Wis. 429, 109 N.W. 109 (1906); *Cardinal Publishing I*, 205 Wis. 2d at 347. In theory, assessors and courts who cannot evaluate either revenue or space may have to examine the amount of time exempt prop-

115

erty is used for non-exempt purposes. But it does not follow that unused time should be counted against the owner any more than unused space is counted against an owner. A rural church used only one day per week does not lose its full property tax exemption. A tax exempt soccer field does not lose its exempt status on those winter and spring days when soccer has to be played indoors. Hence, with respect to the "use" element, so long as exempt property is used on a regular basis for an appropriate exempt purpose, it is entitled to a total exemption, unless its use for non-exempt purposes is not "inconsequential."

### III.

¶ 91. If, for the sake of argument, this court were unable to find a total exemption for Lot 3, the question would become whether Deutsches Land is entitled to a partial exemption under either § 70.11(8) or the § 70.11 preamble. At trial, Deutsches Land was willing to agree to a partial exemption of Lot 3 in order to resolve the case. Petitioner's brief at 22–23. It should not lose everything simply because the circuit court awarded the benevolent association 100 percent. Under these circumstances, the appropriate remedy would be to remand the case to the circuit court for a determination of the precise percentage of partial exemption.

¶ 92. The city contends that Deutsches Land is ineligible for any partial exemption of Lot 3 under § 70.11(8) because Deutsches Land leases Old Heidelberg Park to Bavarian Waldhaus Inn, Inc. This position is consistent with the finding of the court of appeals that: "Both the Bavarian Inn and Old Heidelberg Park are *leased* to Bavarian Waldhaus, for the for-profit corporation." *Deutsches Land*, 215 Wis. 2d at 558. (Emphasis added.)

116

¶ 93. In my view, however, this finding is not supported by the record. The circuit court found that Bavarian Waldhaus Inn, Inc. "leases the first floor of the Bavarian Inn from Deutsches Land. This lease is an oral lease." Petitioner's Appendix at 113–14. The circuit court never found that Bavarian Waldhaus Inn, Inc. leases Old Heidelberg Park.

¶ 94. Deutsches Land's last written lease expired in 1990. That lease did not mention Old Heidelberg Park (unless one is prepared to construe the term "restaurant and banquet facility"—singular—as applying to Fest Hall in Old Heidelberg Park).

¶ 95. Wis. Stat. § 704.01 defines "lease" and several other terms in a "landlord and tenant" context.[6] By comparing these statutory terms, the most appropriate

---

[6] 704.01 Definitions. . . .

(1) "Lease" means an agreement, whether oral or written, for transfer of possession of real property, or both real and personal property, for a definite period of time. A lease is for a definite period of time if it has a fixed commencement date and a fixed expiration date or if the commencement and expiration can be ascertained by reference to some event, such as completion of a building. A lease is included within this chapter even though it may also be treated as a conveyance under ch. 706. An agreement for transfer of possession of only personal property is not a lease.

(2) "Periodic tenant" means a tenant who holds possession without a valid lease and pays rent on a periodic basis. It includes a tenant from day-to-day, week-to-week, month-to-month, year-to-year or other recurring interval of time, the period being determined by the intent of the parties under the circumstances, with the interval between rent-paying dates normally evidencing that intent. . . .

(5) "Tenant at will" means any tenant holding with the permission of his landlord without a valid lease and under circumstances not involving periodic payment of rent; but a person holding possession of real property under a contract of purchase or an employment contract is not a tenant under this chapter. (Emphasis added.)

117

term for the situation involving the occasional use of Lot 3 by the Bavarian Inn is "tenant at will." By definition, a tenant at will does not have a valid lease. If the Bavarian Inn was a tenant at will in Old Heidelberg Park, then the court of appeals was mistaken and Deutsches Land is eligible for a partial exemption under § 70.11(8). If, on the other hand, the majority believes that Deutsches Land actually "leased" Old Heidelberg Park to Bavarian Waldhaus Inn, Inc., then it should say so. If that were the situation, Deutsches Land would be ineligible for an exemption under either § 70.11(8) or the § 70.11 preamble,[7] and this would not be a sufficiency of evidence case.

¶ 96. The majority notes that the proof required from an applicant for a partial exemption may be quite detailed. It writes: "[W]here the entire property [Lot 3] is used part of the time in for-profit activities, the partial exemption can be calculated in one of two ways.

---

[7] If there were a lease covering all of Lot 3, as alleged, Deutsches Land would be ineligible for the exemption under the § 70.11 preamble because the lessee (Bavarian Waldhaus Inn, Inc.) would *not* "be exempt from taxation under this chapter if it owned the property." Moreover, Deutsches Land probably could not show that it used "all of the leasehold income for maintenance of the leased property, construction debt retirement of the leased property or both. . . ." Deutsches Land would be ineligible for exemption for Lot 3 under § 70.11(8) because, by definition, subsection (8) "does not apply to property that is leased by an exempt organization to another person . . ." I agree that if Deutsches Land leased a discrete part of Lot 3 to the Bavarian Inn, that "part" would be subject to tax and the unleased part would remain exempt. In addition, a benevolent association like Deutsches Land may lease its entire property to another and still retain its exemption if the lessee satisfies the two tests set out in the preamble as well as the non-discrimination test in § 70.11(4).

The partial exemption can either be determined by comparing the percentage of income attributable to the for-profit activity versus the total income of the exempt organization, or by comparing the percentage of time attributable to the for-profit activity versus the total time the property is used." Majority op. at 92–93.

¶ 97. Here the income approach would not work because Deutsches Land received no income. Hence, the time method would have to be employed. But, as noted above, Deutsches Land has already established how many days the Bavarian Inn and its non-member customers used Lot 3. All other time should be attributed to the benevolent associations.

¶ 98. At the trial, Peter Weissenfluh was asked about the issue of calculating time at the Italian Community Center:

Q: Well, now let me get to the percentage of time. What kind of information did they give you as to percent that supported percentages of time?

A: They actually spelled out the percentages of time that was used for–for for-profit activities *and then the corollary would be the not-for-profit, their own use*. (Emphasis added.)

¶ 99. There are not three classifications of time - (1) actual time used by the associations, (2) actual time used by others, and (3) dead time, which is counted against the benevolent associations when they are not using their property. There are only two classifications of time. In apportioning time to determine the percentage of a partial exemption, a benevolent association may prove the time its property was used by others and then, as a sensible corollary, claim the remaining time for itself, so long as it is actively using its property. Any

119

other result would penalize an association for not using its property 24 hours a day, 7 days a week, 52 weeks a year.

¶ 100. I dissent because Lots 1 and 4 satisfy the statutory criteria of Wis. Stat. § 70.11(4). They are owned by a benevolent association and used for its exempt purposes. These lots are necessary for location and convenience of the locker/shower facility on Lot 4 and Fest Hall, where indoor soccer is played. The locker/shower facility is exempt; and Lot 3, including Fest Hall, is also exempt because it is not leased, its use by non-members is not compensated, and its infrequent occasional use by non-member customers of an affiliated organization is so de minimis, negligible, and comparatively inconsequential that it does not destroy the exemption. If the de minimis use of Lot 3 did impair its total exemption, the lot would clearly be entitled to a substantial partial exemption under § 70.11(8) and the case would have to be remanded for a determination of the exact percentage.

¶ 101. I am authorized to state that Justice Jon P. Wilcox joins in this concurring and dissenting opinion.